A99A0706. PHYSICIAN SPECIALISTS IN ANESTHESIA, P.C.
v. WILDMON et al.
A99A0707. WILDMON v. PHYSICIAN SPECIALISTS IN
ANESTHESIA, P.C.
(521 SE2d 358)

Barnes, Judge.

This appeal and cross-appeal arise out of a lawsuit filed by Physician Specialists in Anesthesia, P.C. ("Physician Specialists") against its former employees Robert Wildmon and Shannyn Duddles. In its complaint, Physician Specialists alleges Wildmon and Duddles breached their duty of employee loyalty (Count 1) and their fiduciary duty (Count 2) by providing confidential information to a competing group of doctors while still employed by Physician Specialists. Wildmon and Duddles subsequently moved for summary judgment. The trial court granted complete summary judgment to Duddles and partial summary judgment to Wildmon. In Case No. A99A0706, Physician Specialists appeals the portion of the trial court's order granting summary judgment. In Case No. A99A0707, Wildmon appeals the partial denial of his motion for summary judgment. For reasons that follow, we affirm the trial court's grant of summary judgment and reverse its denial of complete summary judgment to Wildmon.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.

(Emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). On appeal from a grant of summary judgment, this Court conducts a de novo review of the record, construing the evidence and all inferences therefrom in favor of the nonmoving party. *Maddox v. Southern Engineering*, 231 Ga. App. 802, 803 (500 SE2d 591) (1998); *Lane v. Spragg*, 224 Ga. App. 606 (481 SE2d 592) (1997).

Construed in this light, the record shows that Physician Specialists is a professional corporation with physician shareholders who specialize in the fields of anesthesia, critical care, and pain management. Physician Specialists in Pain Management, Inc. ("Pain Management") is a separate legal corporation formed by these physician shareholders and three non-shareholders "for various reasons, including separation of [Physician Specialists'] pain practice in fur-

therance of . . . accounting considerations and for the collection of facility fees." At all relevant times, the physician shareholders of Physician Specialists were also shareholders of Pain Management, controlling the operations and management of Pain Management.

Duddles worked for Pain Management as its Assistant Practice Administrator from June 1, 1994 until she resigned on November 15, 1995, effective December 1, 1995. Although she was paid by Physician Specialists, Duddles worked exclusively for Pain Management pursuant to a "Contract Labor Agreement" between Physician Specialists and Pain Management. This Agreement required Pain Management to reimburse Physician Specialists for the cost of her salary and fringe benefits.

Duddles' responsibilities as Assistant Practice Administrator included managing the day-to-day operations of Pain Management, supervising front office personnel, and acting as a liaison between the nurses and the front office personnel. According to Physician Specialists' president, Duddles "also negotiated on behalf of [Physician Specialists] and [Pain Management] with managed care organizations." However, it is undisputed that Duddles did not have the authority to (1) enter into contracts on behalf of either Physician Specialists or Pain Management; (2) hire or fire personnel of either entity; or (3) sign checks or make payments on behalf of either entity.

Wildmon was employed by Physician Specialists from May 1993 until December 31, 1995. He was hired as a billing clerk and promoted to the position of Assistant Practice Administrator in the fall of 1993. When Physician Specialists terminated its Practice Administrator in September 1995, Wildmon acted as its Practice Administrator until he resigned on November 6, 1995, effective December 31, 1995.

Wildmon's responsibilities as Assistant Practice Administrator involved human resource and personnel issues, including physician expense accounts and health disbursement accounts. He also provided general assistance to the Practice Administrator. It is undisputed that during Wildmon's employment as Assistant Practice Administrator, he did not have the authority to (1) sign contracts on behalf of Physician Specialists, or (2) hire or fire employees of Physician Specialists.

The parties disagree about Wildmon's responsibilities and authority after he became the acting Practice Administrator in September 1995. Wildmon asserts he never had express authority to enter into contracts on behalf of Physician Specialists. In an OCGA § 9-11-30 (b) (6) deposition, a corporate representative of Physician Specialists testified that Wildmon had authority to enter into contracts on its behalf after he became the acting Practice Administrator. There is no evidence in the record that Wildmon actually entered

into contracts on Physician Specialists' behalf.

1. Physician Specialists contends the trial court erred by concluding Wildmon owed no fiduciary duty while he was employed as Assistant Practice Administrator and that Duddles owed no fiduciary duty whatsoever.

In *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. 604, 606 (1) (503 SE2d 278) (1998), the Supreme Court held that fiduciary duties are owed by those in confidential relationships as defined by OCGA § 23-2-58. This Code section provides:

> Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling authority over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.

OCGA § 23-2-58.

Physician Specialists asserts a question of fact remains as to whether Wildmon and Duddles were its agents and therefore owed a fiduciary duty to it, their principal. It also asserts a confidential relationship existed between itself and the defendants because they could exercise control over its will or conduct.

(a) OCGA § 10-6-1 explains that "[t]he relation of principal and agent arises whenever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." Although an employee may at times act on behalf of his employer, an employer-employee relationship does not typically create a principal-agent relationship. See *Cochran v. Murrah*, 235 Ga. 304, 307 (219 SE2d 421) (1975); *Atlanta Market*, supra, 269 Ga. at 607. The distinguishing characteristic of an agent is that "[h]e is vested with authority, real or ostensible, to create obligations on behalf of his principal, bringing third parties into contractual relations with him." *Southeastern Fidelity Ins. Co. v. Heard*, 123 Ga. App. 635, 639 (3) (b) (182 SE2d 153) (1971). See also *Atlanta Market*, supra, 269 Ga. at 606. Thus, in *Atlanta Market*, the Supreme Court held that the trial court properly granted summary judgment to a defendant on the plaintiff's breach of fiduciary duty claims because there was no evidence that the parties could create obligations on each other's behalf. Id. at 606-607.

In this case, there is no evidence in the record showing that Duddles could create obligations on behalf of Physician Specialists or bring third parties into contractual relations with it. Likewise, no evidence in the record shows Wildmon could do the same when he

was employed as its Assistant Practice Administrator.

Physician Specialists asserts the following statement in the affidavit of Physician Specialists' president, Dr. Sween, nonetheless creates an issue of fact on the agency issue:

> [Duddles] and Wildmon were employed by [Physician Specialists] in high-level, well-paid positions as Assistant Practice Administrators with total and unrestricted access to virtually all corporate records and files of [Physician Specialists] and *were agents of [Physician Specialists].*

(Emphasis supplied.) Relying upon *Commercial Union Ins. v. Taylor,* 169 Ga. App. 177, 180 (3) (312 SE2d 177) (1983), Physician Specialists argues that Dr. Sween's declaration that Duddles and Wildmon "were agents" is a statement of fact that creates a genuine issue as to whether they were its agents. We disagree.

In *Salters v. Pugmire Lincoln-Mercury,* 124 Ga. App. 414, 415 (184 SE2d 56) (1971), we crafted the often cited principle that "one who is a party to the relationship (principal or agent) may testify as a *fact* as to the existence or non-existence of the relationship." However, one of the cases cited in *Salters* to support this principle demonstrates that the specific facts of a case may render such a statement a mere conclusion. In *Great Southern Accident &c. Co. v. Guthrie,* 13 Ga. App. 288, 292-293 (6) (79 SE 162) (1913), we stated:

> Testimony of Lockridge & Tanner and Moore, that Lockridge & Tanner were agents of the corporation, stated a mere conclusion, not supported by the proven facts. Standing alone, it would be the statement of a fact, but other facts having been proved which show that in law there was no such agency, the statement became merely an erroneous conclusion.

In this case, as in *Great Southern,* the proven facts show that Duddles and Wildmon, when acting as Assistant Practice Administrators, were not agents who could enter into obligations on behalf of Physician Specialists. As a result, the trial court did not err when it concluded they were not agents owing a fiduciary duty to Physician Specialists.

(b) Our inquiry, however, does not end here. As outlined above, the confidential relationship giving rise to a fiduciary duty is not limited to that between a principal and agent. See OCGA § 23-2-58. In *Cochran v. Murrah,* supra, the Supreme Court noted that the relationship between an employer and its employee is not the type of relationship from which a confidential relationship will be implied as a matter of law. Id. at 307. However, it also left the door open for our courts to find a confidential relationship on a case-by-case basis with

the following statement:

> Generally, the relationship between an employer and employee is that of arms-length bargaining. This is not to say, however, that under a particular fact situation a confidential relationship can never exist between an employer and his employee (e.g., an employer signing checks prepared by his secretary-bookkeeper).

Id. After reviewing the particular facts of this case, we find they do not demonstrate a confidential relationship between Physician Specialists and Duddles or Wildmon, when he acted as Assistant Practice Administrator. "[T]he mere circumstance that two people have come to repose a certain amount of trust and confidence in each other as the result of business dealings is not, in and of itself, sufficient to find the existence of a confidential relationship." *Parello v. Maio*, 268 Ga. 852, 853 (1) (494 SE2d 331) (1998). As a result, the trial court properly granted summary judgment to Duddles and partial summary judgment to Wildmon on Physician Specialists' breach of fiduciary claim against them.

2. In Case No. A99A0707, Wildmon contends the trial court should have granted complete summary judgment in his favor. Although we conclude the trial court properly found an issue of fact as to whether Wildmon was an agent of Physician Specialists during the period he was its "acting Practice Administrator," its analysis should not have ended there.

Wildmon argues that even if a question of fact exists on whether he was an agent owing a fiduciary duty during the time period he acted as the Practice Administrator, there is no evidence he violated his fiduciary duty during this time. We agree. "[A]n employee breaches no fiduciary duty to the employer by making plans to enter a competing business while he is still employed." *E. D. Lacey Mills v. Keith*, 183 Ga. App. 357, 362 (9) (359 SE2d 148) (1987). " '[B]efore the end of his employment, he can properly purchase a rival business and upon termination of employment immediately compete.' Restatement 2nd of Agency." Id. at 363.

In this case, Physician Specialists argues an issue of fact was created by an insurance document signed by Wildmon on November 15, 1995, certifying that he was the Vice President of Financial Operations for a competitor of Physician Specialists. We disagree. This document, which was a corporate officer's rejection of workers' compensation insurance, was signed by Wildmon after he had tendered his notice to Physician Specialists and demonstrates nothing more than a plan to compete. There is no evidence that Wildmon failed to carry out his assigned duties, solicited Physician Specialists'

patients, or directly competed with Physician Specialists during his tenure as acting Practice Administrator. See *Kitfield v. Henderson, Black & Greene*, 231 Ga. App. 130, 135 (7) (498 SE2d 537) (1998); *E. D. Lacey Mills*, supra, 183 Ga. App. at 363. As a result, the trial court erred when it granted only partial summary judgment to Wildmon on Physician Specialists' breach of fiduciary duty claim.

3. The trial court did not err by granting summary judgment to the defendants on Physician Specialists' claim for "breach of duty of employee loyalty." During oral argument, we requested the parties to brief whether any Georgia authority recognizes or creates a cause of action for breach of loyalty against an employee who does not also owe a fiduciary duty. The research of both this Court and the parties revealed no such authority, and we decline to create it here.[1] Allowing an employer to sue an at-will employee for breach of loyalty when our law allows an employer to terminate an at-will employee for "any or no reason"[2] would create an unfair and unjust advantage for employers.

Thus, a cause of action against an employee for breach of loyalty must be based upon a fiduciary duty owed by the employee and must rise and fall with any claim for breach of fiduciary duty.[3] Since we have already held that Duddles and Wildmon were entitled to summary judgment in their favor for Physician Specialists' breach of fiduciary duty claims, the trial court did not err by granting summary judgment in their favor on the breach of employee loyalty claim.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 28, 1999.

*Decker & Hallman, Richard P. Decker, F. Edwin Hallman, Jr.*, for appellant.

*Parker, Hudson, Rainer & Dobbs, John H. Parker, Jr., Leo E. Reichert, David L. Fenstermacher*, for appellees.

---

[1] Our decision in *Lane Co. v. Taylor*, 174 Ga. App. 356, 362 (5) (330 SE2d 112) (1985), is physical precedent only and is not binding in any other case.

[2] See, e.g., *Phinazee v. Interstate Nationalease*, 237 Ga. App. 39, 41 (514 SE2d 843) (1999).

[3] We note that this does not mean, however, that other causes of action, such as misappropriation of trade secrets or interference with business relations, are not available to employers.