A00A0107. THERAGENICS CORPORATION v. DEPARTMENT OF
NATURAL RESOURCES.
(536 SE2d 613)

POPE, Presiding Judge.

Appellant Theragenics Corporation is a Georgia corporation founded in 1981 to develop, manufacture and sell radioactive "seeds" (sold under the brand name of TheraSeed®) that are used in a cancer treating procedure known as brachytherapy.[1] The radioactive ingredient in TheraSeed® is Palladium-103, also referred to as Pd-103. The active ingredient in Pd-103 does not exist in nature, and Theragenics manufactures the raw material used in TheraSeed® using its own proprietary method. Theragenics was the first company in the world to produce and commercially market a Palladium brachytherapy seed and is apparently one of only two companies in the world manufacturing and selling a brachytherapy seed containing Pd-103 as the active ingredient.[2]

Because of the nature of its product, Theragenics faced significant and unique problems in developing and manufacturing TheraSeed®.[3] And because radioactive material is used in manufacturing TheraSeed®, Theragenics' operations are subject to regulation by the appellee in this case, the Environmental Protection Division (EPD) of the Georgia Department of Natural Resources (DNR). In order to receive and maintain a license to operate in Georgia, Theragenics has been required to furnish the EPD with detailed information concerning all aspects of its operation. This has resulted in a substantial number of documents being filed with the EPD. Theragenics desig-

---

[1] In brachytherapy, the radioactive seeds, which are approximately the size of a grain of rice, are placed inside of the cancerous tissue.

[2] According to the record, the Pd-103 seed has therapeutic advantages over the other type of radioactive isotope used in brachytherapy.

[3] For example, Theragenics uses a machine known as a cyclotron to create Pd-103. In the cyclotron, the metal rhodium is bombarded with protons to create Pd-103. Theragenics was the first to use this method on a commercial scale, and the "scale-up" and refinement of the method took years and millions of dollars to develop.

nated approximately one-third of the documents as "proprietary" or "confidential" when they were submitted to the EPD.

In November 1997, the EPD received a request under what is commonly referred to as the Georgia Open Records Act, OCGA § 50-18-70 et seq., to review Theragenics' files. The request was made by an attorney for International Brachytherapy, S.A. (IBt), a foreign competitor whose principals are former Theragenics' employees.[4] The EPD subsequently informed Theragenics of this request and its intent to make available those documents which were not marked confidential or proprietary when they were filed with the EPD. Thereafter, representatives of Theragenics reviewed the EPD files and indicated to the EPD staff that many of the unmarked files also contained trade secret information. In early December, Theragenics was allowed to place yellow "stick-on" notes on those documents; Theragenics also requested that the EPD not allow access to those documents, which consisted of approximately 60 percent of the file. Theragenics was subsequently informed that all documents not originally marked or otherwise designated as trade secrets when submitted to the EPD would be provided to IBt. Theragenics filed a motion for a preliminary and permanent injunction, seeking to enjoin the release of those documents it contended contained trade secret information. The trial court denied the motion, and Theragenics filed this appeal.

The Open Records Act provides that all public records[5] of a state agency, "except those which . . . [are] specifically exempted from being open to inspection by the general public, shall be open for a personal inspection by any citizen of this state at a reasonable time and place; and those in charge of such records shall not refuse this privilege to any citizen."[6] OCGA § 50-18-70 (b). One of the specific exemptions listed in OCGA § 50-18-72 is for "(1) [a]ny trade secrets obtained from a person or business entity which are of a privileged or confidential nature and required by law to be submitted to a government agency. . . ." OCGA § 50-18-72 (b). The term "trade secret" is

---

[4] Theragenics has filed a trade secret misappropriation action against IBt.

[5] OCGA § 50-18-70 (a) provides that a " 'public record' shall mean all documents . . . prepared and maintained *or received* in the course of the operation of a public office or agency." (Emphasis supplied.)

[6] Our Supreme Court has held that a citizen of this state is not disqualified from exercising his rights under this Code section "because he happens to be an employee of a nonresident corporation and may share the information received with his employer." *Atchison v. Hosp. Auth. of St. Mary's*, 245 Ga. 494, 495 (2) (265 SE2d 801) (1980). Based on this decision, our Attorney General has issued an official opinion that public records which are otherwise not exempt from disclosure should be available upon request by nonresidents as well as residents of this state. 1993 Op. Atty. Gen. 27.

defined in OCGA § 10-1-761 (4) of the Georgia Trade Secrets Act of 1990 as follows:

> information, without regard to form, . . . which is not commonly known by or available to the public and which information: (A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

The trial court framed the question in this case as "[w]hether submitting documents not designated as confidential to a public agency that is subject to the Georgia Open Records Act constitutes reasonable efforts to protect the information in those documents?" The trial court answered the question in the negative and held that Theragenics failed to take reasonable efforts to protect its trade secret information because it did not specifically notify the EPD that it was submitting documents containing trade secret information. However, we find the trial court erred in focusing its inquiry on the manner in which Theragenics filed documents with the EPD. Rather, the proper inquiry in this case was whether Theragenics took reasonable efforts to protect the information without regard to its actions in submitting the information to the EPD. If reasonable efforts were made to protect the dissemination of the information except for providing it to the EPD, then trade secret status was not lost simply because Theragenics did not notify the EPD each time that it provided them with information containing trade secrets. Here, the EPD has made no contention that Theragenics did not take reasonable efforts to protect its trade secrets, except for the fact that Theragenics failed to designate them as such when it filed them with the EPD.

We reach this result for several reasons. First, we note that Theragenics was required to provide the EPD with confidential, proprietary and trade secret information as a condition of maintaining operations in this state. Moreover, there were no applicable statutory provisions or DNR rules or regulations which explicitly required Theragenics to notify the EPD that its documents contained trade secret information at the time of filing. Instead, as Theragenics points out, it appears that the DNR rules, which make reference to OCGA § 31-5-5 (b), give the DNR the authority to classify documents as confidential and privileged "where such matters relate to secret processes, formulas, and methods *or* where such matters were obtained or furnished on a confidential basis." Id. And although the EPD points to both statutory and case law mandating that exemp-

tions to disclosure under the Open Records Act should be narrowly construed, OCGA § 50-18-72 (g); *Hardaway Co. v. Rives*, 262 Ga. 631, 634 (2) (a) (422 SE2d 631) (1992), our holding is not the result of a broad reading of the trade secret exemption.

And our holding does not eviscerate the purpose of the Open Records Act, which is "to encourage public access to government information and to foster confidence in government through openness to the public." *McFrugal Rental &c. v. Garr*, 262 Ga. 369 (418 SE2d 60) (1992). Indeed, it is hard to envision how disclosure to a foreign corporate competitor of a private entity's confidential or proprietary information, which it was required to file with a state agency in order to operate a business in this state, would promote the purpose of the Open Records Act.

The EPD argues, however, that it does not have the resources to review the countless documents it receives to determine which contain trade secrets and that to protect itself it must release all documents unless it has been notified that they contain trade secrets. Perhaps the EPD's strongest argument is that it cannot protect something that it does not know is a trade secret. But these arguments do not persuade us to reach a different result. OCGA § 50-18-70 (f) provides that "[t]he individual in control of such public record or records shall have a reasonable amount of time to determine whether or not the record or records requested are subject to access under this article. . . ." Thus, a state agency faced with an Open Records Act request directed at documents filed by a private person or entity must always make an independent determination concerning whether the documents should be disclosed under the Act. There are numerous exemptions to disclosure outlined in OCGA § 50-18-72, and the state agency must ascertain if any of these apply to requested records. Moreover, even if the state agency is notified that it is receiving trade secret or other information allegedly exempt from disclosure, it is nevertheless incumbent upon the state agency to verify a filing entity's designation before refusing to disclose the information. Therefore, when the EPD received the Open Records request in this case, it was incumbent upon the EPD to ascertain which documents provided by Theragenics contained trade secret information,[7] no matter what designation Theragenics did or did not place on the documents at the time of filing. The trial court's order is reversed.

*Judgment reversed. Smith, P. J., and Miller, J., concur.*

---

[7] It appears to us that the procedure employed by the EPD of notifying Theragenics of the request and allowing it to review and mark its documents was a good first step in this process.

DECIDED JULY 7, 2000 

*Powell, Goldstein, Frazer & Murphy, Jerry B. Blackstock, John W. Harbin, Tracy M. Culver*, for appellant.

*Thurbert E. Baker, Attorney General, Robert S. Bomar, Deputy Attorney General, Isaac Byrd, Senior Assistant Attorney General, John E. Hennelly, Assistant Attorney General*, for appellee.