A01A0378, A01A0379. TRONITEC, INC. v. SHEALY et al.; and vice versa.
(547 SE2d 749)

JOHNSON, Presiding Judge.

On January 5, 1998, Tony Shealy, Jarrett Black and Rodney Smith resigned their positions with Tronitec, Inc. and started a competing business, Freedom Electronics, Inc. ("FEI"). Tronitec and FEI repair and sell circuit boards used in gas station fuel pumps. On November 20, 1998, Shealy, Black, Smith and FEI sued Tronitec and one of its salesmen, Timothy Arrington, for tortious interference with contract and slander, among other things. Tronitec counterclaimed for misappropriation of trade secrets, injunctive relief, breach of duty

---

of loyalty, conversion, theft and violation of the Georgia Racketeer Influenced & Corrupt Organizations (RICO) Act.[1]

In its September 16, 1999 order, the trial court denied Tronitec's motion for summary judgment on Shealy, Black, Smith and FEI's slander claim. In its October 29, 1999 order, the trial court ruled that Tronitec's counterclaims were compulsory. The trial court also granted Shealy, Black, Smith and FEI partial summary judgment on Tronitec's misappropriation counterclaim and granted summary judgment to Shealy, Black, Smith and FEI on Tronitec's claims for injunctive relief, conversion, theft and violation of the Georgia RICO Act. In Case No. A01A0378, Tronitec appeals the October 29, 1999 order, including in its enumeration of errors the trial court's September 16, 1999 denial of its motion for summary judgment on Shealy, Black, Smith and FEI's slander claim. Shealy, Black, Smith and FEI cross-appeal in Case No. A01A0379.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law.[2]

### Case No. A01A0378

1. Tronitec claims the trial court erred in denying its motion for partial summary judgment on Shealy, Black, Smith and FEI's slander claim. We agree.

(a) In a threshold issue, Shealy, Black, Smith and FEI challenge Tronitec's right to appeal because Tronitec was denied a certificate of immediate review for the September 16, 1999 order. But because Tronitec makes a direct appeal of the trial court's October 29, 1999 order, it may appeal other orders in the case which may affect the proceeding below, including the earlier order denying summary judgment.[3]

(b) Evidence shows that Arrington told an FEI customer, "something to the effect that Rodney Smith and the other Tronitec employees who formed [FEI] had, in effect, stolen customer lists from Tronitec prior to their resignation from Tronitec. . . ." Arrington "implied that other items of Tronitec property may also have been stolen. . . ."

Tronitec claims that Arrington's statements do not constitute slander per se, as contended by Shealy, Black, Smith and FEI, because his comments were ambiguous and criminal activity was

---

[1] OCGA § 16-14-1 et seq.

[2] OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[3] *Southeast Ceramics v. Klem*, 246 Ga. 294, 295 (1) (271 SE2d 199) (1980).

only inferred. Tronitec correctly notes that, "where the plain import of the words spoken impute no criminal offense, they cannot have their meaning enlarged by innuendo."[4] But the statements here are specific and do plainly impute a criminal offense. Theft of trade secrets, which may include customer lists, is a crime.[5] Arrington's alleged statements do not require innuendo or inference to amount to an accusation of a crime. Such an accusation constitutes slander under OCGA § 51-5-4 (a) (1).

(c) Tronitec argues that even if Arrington's statements constituted slander, the evidence would not authorize a jury to find that it slandered Shealy, Black, Smith and FEI.[6] We agree. An employer is not liable for the slanderous utterances of an employee acting within the scope of employment, unless it affirmatively appears the employer ordered or authorized the employee to make the statements.[7]

Shealy, Black, Smith and FEI argue that Tronitec ordered or authorized Arrington to make the slanderous statements because Tronitec told Arrington that Shealy, Black, Smith and FEI had stolen the customer lists and because the statements made by Tronitec in its pleadings would be defamatory if not privileged. We fail to see how this reasoning demonstrates that Arrington made the slanderous statements on Tronitec's order or authorization, as opposed to his independent volition. Shealy, Black, Smith and FEI can point to no evidence which would support their contention that Tronitec ordered or authorized Arrington to make the slanderous statements.[8]

Although Shealy, Black, Smith and FEI urge us to follow *Elder v. Cardoso*,[9] it appears that in *Elder* we failed to apply the holding in the then recent *Lau's Corp.*, when we required the movant to affirmatively show, in order to prevail in its motion for summary judgment, that it did not order its employee to make slanderous statements.

A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence

---

[4] (Citation omitted.) *Parks v. Multimedia Technologies*, 239 Ga. App. 282, 294 (520 SE2d 517) (1999).

[5] OCGA § 16-8-13.

[6] See *Gillis v. American Gen. Life &c. Ins. Co.*, 222 Ga. App. 891, 892 (476 SE2d 648) (1996).

[7] *Smith v. Trust Co. Bank*, 215 Ga. App. 413, 416 (2) (450 SE2d 866) (1994). See also *Desmond v. Troncalli Mitsubishi*, 243 Ga. App. 71, 75 (3) (532 SE2d 463) (2000).

[8] See *Desmond*, supra.

[9] 205 Ga. App. 144, 147 (421 SE2d 753) (1992).

of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[10]

In this case, Shealy, Black, Smith and FEI failed to present any evidence that Tronitec ordered or authorized Arrington's statements. Thus, the trial court erred in not granting summary judgment to Tronitec on their slander claim.

2. Tronitec requested a ruling that its counterclaims were not compulsory; it maintains that it could dismiss without prejudice and then refile permissive counterclaims in another jurisdiction. Tronitec claims that the trial court erred by ruling that its counterclaims were compulsory. We disagree and affirm.

A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."[11]

Shealy, Black, Smith and FEI claimed that Arrington and Tronitec made slanderous accusations of theft. Tronitec's counterclaims are based on allegations that Shealy, Black, Smith and FEI misappropriated Tronitec's property. "The broad test to be applied in determining whether a counterclaim is compulsory is whether a logical relationship exists between the respective claims asserted by the opposing parties."[12] The logical connection between the claim and counterclaim is that both concern whether Shealy, Black and Smith improperly took Tronitec's property when they left to form FEI.

Tronitec's reliance on *Bigley v. Mosser*[13] is misplaced. In *Bigley*, we found two slander claims unrelated because different factual inquiries were required in determining the truth or falsity of the statements.[14] Here, there are common facts in determining the acts underlying the slander claim and Tronitec's counterclaims.

3. In its counterclaim, Tronitec alleged that Shealy, Black, Smith and FEI had misappropriated Tronitec's proprietary information and trade secrets, including customer lists. The trial court granted partial summary judgment to Shealy, Black, Smith and FEI with respect to the misappropriation of customer lists, finding that "there is no evidence that FEI's customer list was derived from a tangible customer list of Tronitec." Tronitec claims the trial court erred in its

---

[10] See *Lau's Corp.*, supra at 491.

[11] OCGA § 9-11-13 (a).

[12] (Citations omitted.) See *Schoen v. Home Fed. Sav. &c.*, 167 Ga. App. 644, 645 (1) (307 SE2d 72) (1983).

[13] 235 Ga. App. 583 (509 SE2d 406) (1998) (physical precedent only).

[14] Id. at 587.

finding of partial summary judgment. We disagree and affirm.

The Trade Secrets Act[15] maintains the common law distinction that while an employer's customer lists were considered to be the employer's property, a former employee's knowledge of customer information was not.[16] To prevail on its claim, Tronitec needs to show evidence that Shealy, Black and Smith left with tangible customer lists. This it cannot do.

Tronitec's president testified that "[F]EI's prospect list . . . is the same style and organization as the Tronitec prospect list, and is a virtual duplicate of the Tronitec prospect list." Other evidence shows that Smith had access to Tronitec's prospect and customer computer database. But the inferences to be drawn from similarities in Tronitec's and FEI's prospect lists, or Smith's access to the customer database, do not necessarily indicate a misappropriation of Tronitec's customer list. Smith's prior access does not imply a physical taking, and a similarity in the two lists would be expected if Shealy, Black and Smith compiled FEI's prospect list using their knowledge of Tronitec's customer base. The trial court correctly granted partial summary judgment to Shealy, Black, Smith and FEI with respect to Tronitec's counterclaim of misappropriation of customer lists.

4. Tronitec claims the trial court erred in dismissing its claims for interlocutory and permanent injunctive relief. The trial court denied relief because it found (1) that Tronitec's claim for injunctive relief had been heard and decided in an action in Cobb County and (2) because Tronitec waited 13 months after FEI had commenced business before bringing a claim for injunctive relief.

Tronitec argues that the trial court could not properly base its denial of injunctive relief on the Cobb County litigation because no certified copies of the pleadings or orders from the Cobb County court were filed. Accordingly, Tronitec argues, the trial court had no basis for recognizing the Cobb County proceeding.[17] "In order to prove res judicata or collateral estoppel, a litigant must introduce those portions of the prior proceeding, duly certified, which are necessary to prove the defense."[18] Shealy, Black, Smith and FEI argue that Tronitec referenced the Cobb County proceeding in court filings and so waived the right to object to the failure to establish the Cobb County proceeding through certified documentation. Shealy, Black, Smith and FEI also claim that Tronitec cannot argue a failure to file certified copies of the Cobb County litigation for the first time on

---

[15] OCGA § 10-1-760 et seq.

[16] *Avnet, Inc. v. Wyle Labs.*, 263 Ga. 615, 619 (2) (437 SE2d 302) (1993).

[17] See *Bigley v. Mosser*, supra.

[18] (Citations and punctuation omitted.) *Bradley v. British Fitting Group*, 221 Ga. App. 621, 622 (2) (472 SE2d 146) (1996).

appeal. We agree.

Our review of the record shows the following. In a motion for summary judgment, Shealy, Black, Smith and FEI argued that a Cobb County proceeding filed February 25, 1999, was res judicata as to Tronitec's demand for injunctive relief. In its response, Tronitec refers to a February 25, 1999 Cobb County action, which it describes as "essentially, involving the same claims" as this action. But Tronitec does not address Shealy, Black, Smith and FEI's res judicata argument. Then, in their motion for partial reconsideration, which was granted by the trial court, Shealy, Black, Smith and FEI again make the argument that the Cobb County proceeding was res judicata to Tronitec's injunction request and this time refer to an attached exhibit "C." However, the appellate record shows no attachment to that motion.

We find that Shealy, Black, Smith and FEI presented an argument to the trial court based on a February 25, 1999 Cobb County action, but did not support the argument with certified copies of the action. However, Tronitec cannot fail to object to this defect before the trial court and then raise it now. By waiting to make this argument for the first time on appeal, Tronitec has waived it.[19] Accordingly, we must affirm the trial court's denial of Tronitec's claims for injunctive relief.

5. Tronitec claims that the trial court erred in granting summary judgment in favor of Shealy, Black, Smith and FEI on Tronitec's counterclaims for conversion and theft. The Trade Secrets Act generally supersedes conflicting tort, restitutionary or other laws providing civil remedies for misappropriation of trade secrets.[20] The trial court found that Tronitec's counterclaims for conversion and theft were superseded by the Trade Secrets Act. The trial court ruled correctly to the extent Tronitec's counterclaims of conversion and theft were limited to trade secrets. However, the trial court erred in granting Shealy, Black, Smith and FEI summary judgment with respect to Tronitec's counterclaim for conversion and theft of a personal computer by Smith. The computer is personal property and not a trade secret. Questions of fact remain as to its ownership.

6. Tronitec claims that the trial court erred in granting summary judgment on its RICO claim.[21] In order to prevail on this claim, Tronitec is required to present clear and convincing evidence of a pattern of "racketeering activity"[22] directed against it by Shealy, Black, Smith and FEI. Including the evidence regarding the computer theft

---

[19] See *Angell v. Hart*, 232 Ga. App. 222, 223 (2) (501 SE2d 594) (1998).
[20] OCGA § 10-1-767 (a).
[21] OCGA § 16-14-6 (c).
[22] OCGA §§ 16-14-4; 16-14-3 (8), (9) (A).

and the evidence authorizing a jury to conclude that Shealy, Black, Smith and FEI misappropriated Tronitec's trade secrets,[23] as discussed in Division 7, Tronitec presented evidence of at least two instances of theft, which constitutes a racketeering activity.[24]

The trial court found that Tronitec had failed to set forth clear and convincing evidence that Shealy, Black, Smith and FEI violated the Georgia RICO Act, as required by *Simpson Consulting v. Barclays Bank*.[25] But the question of whether evidence is clear and convincing is usually for the jury.[26] We cannot say that, while there is evidence sufficient to allow a jury to find the predicate acts by a preponderance of the evidence, it is not clear and convincing evidence. The weight of the evidence will largely depend on witness credibility. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, when he is ruling on a motion for summary judgment."[27] The trial court erred in granting Shealy, Black, Smith and FEI's motion for summary judgment on Tronitec's RICO claim.

## Case No. A01A0379

In the cross-appeal, Shealy, Black, Smith and FEI claim the trial court erred in (1) partially denying their motion for summary judgment on Tronitec's counterclaim for misappropriation of trade secrets, (2) denying their motion for summary judgment on Tronitec's counterclaim for breach of loyalty and fraud, and (3) denying their claim for attorney fees under OCGA § 10-1-764.

7. The trial court found sufficient evidence to deny Shealy, Black, Smith and FEI's motion for summary judgment on Tronitec's counterclaim for misappropriation of trade secrets. Construed in favor of Tronitec as the nonmovant, the record shows that Tronitec developed a digital test station ("DTS") and a digital station interface box ("DSIB") for use in testing and repair of circuit boards. The DTS/DSIB connects a personal computer to a malfunctioning electronic circuit board. Through Tronitec's internally produced software, the computer assists in analyzing a circuit board, resulting in time and cost savings in its repair. Although the DTS/DSIB is assembled from commercially available parts, it is uniquely wired and adapted, cost over $25,000 in development, and required 2,000 hours of research and engineering work to produce.

---

[23] See OCGA § 16-8-13.
[24] OCGA § 16-14-3 (9) (A) (ix).
[25] 227 Ga. App. 648 (490 SE2d 184) (1997) (physical precedent only).
[26] *Freeman v. Saxton*, 240 Ga. 309, 310 (1) (240 SE2d 708) (1977).
[27] (Punctuation omitted.) *Barber v. Perdue*, 194 Ga. App. 287 (390 SE2d 234) (1989).

Shealy, Black, Smith and FEI maintain that Tronitec's data, programs, devices, methods or techniques for repairing circuit boards, including the DTS/DSIB, are not trade secrets and that there is no evidence that any of Tronitec's data, programs, devices, methods or techniques, including the DTS/DSIB, was misappropriated by Shealy, Black, Smith and FEI.

A trade secret is information, without regard to form, including "a compilation, a program, a device . . . which is not commonly known by or available to the public," and which: "(A) [d]erives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."[28]

(a) Shealy, Black, Smith and FEI contend Tronitec's DTS/DSIB is not a trade secret because it is composed of matters known by or available to the public. We disagree. The record indicates that there are functionally equivalent interface devices used by others in the circuit board repair industry and that the DTS/DSIB's function could be reproduced through reverse engineering. But even if the function of Tronitec's DTS/DSIB can be reproduced with a combination of commercially available components and reverse engineering, evidence shows that the actual system is unique to Tronitec.[29] Evidence also shows that such testing systems are not generally available for purchase. Shealy, Black, Smith and FEI were not entitled to summary judgment on the grounds that the DTS/DSIB was publicly available.

(b) Shealy, Black, Smith and FEI contend Tronitec cannot show that it derives economic value by the DTS/DSIB not being generally known to other persons who can obtain economic value from its disclosure or use. They argue that there are hundreds of interface systems in the circuit board repair industry, that they all do the same thing and even if Tronitec's DTS/DSIB is unique, the difference is not economically important. We again disagree.

The evidence shows that the industry is highly competitive and secretive and that its DTS/DSIB gives Tronitec a competitive advantage. A jury could conclude that Tronitec maintained this competitive advantage through keeping the information regarding its DTS/DSIB confidential. Shealy, Black, Smith and FEI were not entitled to summary judgment on the grounds that Tronitec derived no economic benefit from its circuit board diagnostic system not being generally

---

[28] OCGA § 10-1-761 (4).
[29] See *Essex Group v. Southwire Co.*, 269 Ga. 553, 554-555 (1) (a) (501 SE2d 501) (1998).

known to other persons.

(c) Shealy, Black, Smith and FEI argue that Tronitec cannot show that it took reasonable efforts to maintain the secrecy of its DTS/DSIB. They point out that Tronitec allowed public tours of its facilities in which the DTS/DSIBs were on the shop floor in plain view. Shealy, Black, Smith and FEI also note that Tronitec had no confidentiality agreements protecting its purported trade secrets and that no more than locked doors protected the majority of company information.[30]

Tronitec points to evidence that access to its production floor and schematics was controlled and its DTS/DSIBs were covered in the presence of strangers. Testimony also indicates that even a skilled technician, upon viewing Tronitec's testing equipment, could not duplicate its operation absent inspection of the internal circuitry. This would indicate that a casual viewing would not compromise the information's secrecy. Evidence would support a jury finding that Tronitec took reasonable steps under the circumstances to protect the secrecy of its information.[31]

Authority relied upon by Shealy, Black, Smith and FEI can be distinguished. In *Stargate Software Intl.*,[32] for instance, the employer ordered its employees to work for a competitor, thus necessarily divulging trade secrets. In addition, *Equifax Svcs. v. Examination Mgmt. Svcs.*[33] is distinguishable because the information which had allegedly been misappropriated was in the form of a written list of foreign correspondents, and it was protected only by an unenforceable confidentiality agreement.

(d) Shealy, Black, Smith and FEI also argue that the record in this case, which was subject to a protective order at the trial court level, was originally transmitted by the trial court to this court unsealed, resulting in public disclosure destroying any trade secret status the information may have enjoyed. It appears that the appellate record was placed under seal at Tronitec's request a few weeks after the appeal was filed.

The general view is that absolute secrecy is not required for information to retain trade secret status.[34] Filing a trade secret with

---

[30] See *Stargate Software Intl. v. Rumph*, 224 Ga. App. 873, 876-877 (2) (482 SE2d 498) (1997).

[31] See *Avnet, Inc. v. Wyle Labs.*, supra.

[32] Supra.

[33] 216 Ga. App. 35, 39-40 (2) (453 SE2d 488) (1995).

[34] See, e.g., *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F3d 411, 418 (III) (A) (1999) ("While a number of cases have dealt with the disclosure of trade secrets in public court files, none holds that such disclosure, when unaccompanied by evidence of further publication, automatically destroys the 'secrecy' of that secret.").

a governmental entity is not equivalent to its publication.[35] And while court records may be available to the public, there is no general dissemination of such information. We decline to find that Tronitec's information lost its trade secret status merely because it was left unsealed in a court file for a few weeks.

(e) Shealy, Black, Smith and FEI claim that Tronitec cannot show that they misappropriated Tronitec's trade secrets or otherwise obtained Tronitec's information by improper means. They argue that reverse engineering or other independent development is not considered improper means and that FEI's systems, devices, methods and other information used in its circuit board repair business were fairly acquired.[36]

We find, however, that there is sufficient circumstantial evidence that Shealy, Black, Smith and FEI misappropriated Tronitec's trade secrets to withstand their motion for summary judgment. Tronitec's expert testified that he reviewed FEI's and Tronitec's DSIBs and concluded that they were virtually identical. A Tronitec officer testified that based upon his observation of FEI's DSIB and his knowledge of Tronitec's DSIB, that FEI's DSIB was a copy of Tronitec's DSIB. This evidence would authorize a jury to conclude that Shealy, Black, Smith and FEI had misappropriated Tronitec's DSIB.

Evidence shows that from its first day of operation, FEI offered to repair over 100 circuit boards, although there is testimony that over 2,000 hours of technical work would be required to independently develop the testing procedures and schematics to repair those circuit boards. Evidence also shows that, within 90 days of commencing business, FEI was able to repair and ship "vapor-vac motors," a repair ability that had taken Tronitec a year of research to accomplish. There is evidence that FEI acquired the ability to perform commercially competitive circuit board repairs faster than was reasonably possible by independent effort, and a jury could infer from circumstantial evidence that FEI acquired the ability to make the repairs from Tronitec information.

Circumstantial evidence may be sufficient to defeat a motion for summary judgment.[37] In the face of direct evidence, "if the other fact is circumstantial evidence, it must be inconsistent with the defendant's evidence, or if consistent, it must demand a finding of fact on

---

[35] See *Theragenics Corp. v. Dept. of Natural Resources*, 244 Ga. App. 829 (536 SE2d 613) (2000) (filing of trade secret information with government agency, and thus making it available to the public, does not cause loss of trade secret status).

[36] OCGA § 10-1-761 (1).

[37] *Furlong v. Dyal*, 246 Ga. App. 122, 123 (1) (539 SE2d 836) (2000).

the issue in favor of the plaintiff."[38] Testimony by Shealy, Black and Smith that they did not take Tronitec information is not direct evidence sufficient to avoid the inference of misappropriation.[39] The trial court correctly denied partial summary judgment to Shealy, Black, Smith and FEI on Tronitec's counterclaim for misappropriation of its trade secrets.

8. Shealy, Black, Smith and FEI argue that the trial court erred in denying their motion for summary judgment on Tronitec's claim for breach of duty. They maintain that *Physician Specialists in Anesthesia v. Wildmon*[40] establishes that an employer has no claim for breach of duty against an at-will employee.[41] But an employee who may bind his employer does have a fiduciary duty to his employer.[42] There is evidence that, while employed by Tronitec, Smith held a managerial position and had the power to bind Tronitec in purchase agreements. Evidence shows that Smith identified 50 component parts available from a vendor at a favorable price while acting as a Tronitec purchasing agent and purchased 50 of them on his own account. A jury could conclude that Smith used his position with Tronitec for his personal gain to Tronitec's injury. The trial court did not err in denying Shealy, Black, Smith and FEI's motion for summary judgment on Tronitec's counterclaim for breach of the duty of loyalty with respect to Smith. However, Tronitec has not come forward with evidence that Shealy, Black or FEI has breached a duty of loyalty, and the trial court erred by not granting summary judgment to Shealy, Black and FEI on this counterclaim.

9. Shealy, Black, Smith and FEI argue that the trial court erred in denying their claim for attorney fees under OCGA § 10-1-764. In denying their claim, the trial court noted that Shealy, Black, Smith and FEI had not prevailed, in part, in their motion for summary judgment on Tronitec's claim for misappropriation. Under OCGA § 10-1-764: "If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorneys' fees to the prevailing party."

Although we have found evidence of misappropriation sufficient

---

[38] *Michelin Tire Corp. v. Irving*, 185 Ga. App. 783, 784 (1) (366 SE2d 156) (1988).

[39] See *Quill v. Newberry*, 238 Ga. App. 184, 188-190 (518 SE2d 189) (1999) (a defendant cannot simply deny his fraudulent conduct under oath and ask that any contrary circumstantial evidence simply disappear in the face of a sworn denial).

[40] 238 Ga. App. 730 (521 SE2d 358) (1999).

[41] *Physician Specialists* has been distinguished on its facts. See *Tom's Amusement Co. v. Total Vending Svcs.*, 243 Ga. App. 294, 295-296 (2) (a) (533 SE2d 413) (2000) (physical precedent only).

[42] See *Jennette v. Nat. Community Dev. Svcs.*, 239 Ga. App. 221, 223-224 (2) (520 SE2d 231) (1999).

to avoid summary judgment, a jury could still rule in favor of Shealy, Black, Smith and FEI on Tronitec's claim for misappropriation and thus they may yet be the "prevailing party" within the meaning of the statute. Furthermore, upon hearing the testimony, the trial court could determine that there was bad faith on Tronitec's part in making its claims for misappropriation and thus be authorized to award attorney fees to Shealy, Black, Smith and FEI under OCGA § 10-1-764. The trial court erred in granting summary judgment to Tronitec on Shealy, Black, Smith and FEI's claim for attorney fees.

*Judgments affirmed in part and reversed in part. Eldridge and Miller, JJ., concur.*

DECIDED APRIL 11, 2001 —
RECONSIDERATION DENIED MAY 1, 2001 ▮▮▮▮▮▮

*Mabry & McClelland, James T. Budd, Richard C. Freeman III*, for appellant.

*Lawrence E. Newlin, Frank R. Olson*, for appellees.