**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 1, 2018**

# In the Court of Appeals of Georgia

A17A1384. SCOTT v. THE STATE.

BARNES, Presiding Judge.

Derrick Scott was employed by a company that recycles metals, and after falsifying an invoice, he was charged with criminal attempt to commit theft by taking by a fiduciary, a felony. Following a jury trial, Scott was found guilty, and now appeals from the denial of his motion for new trial. On appeal, Scott contends that the trial court erred in denying his motion for directed verdict because there was insufficient evidence of a fiduciary relationship between Scott and his employer. Following our review, and finding the evidence insufficient to establish Scott's fiduciary relationship, we reverse.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence." (Citation and punctuation omitted.) *Hall v. State*, 335 Ga. App. 895, 895 (783 SE2d 400) (2016). So viewed, the evidence demonstrates that as

an employee of M&S Auto Parts and Recycling, Scott was one of two employees responsible for assisting customers who came to the business to sell recyclable metals.[1] His duties included sorting and weighing the metals, and creating an invoice that reflected the weight and price of each metal and the amount owed to the customer. A computer itemized the amount of the payout depending on the type of metal, weight, and the daily per-pound pricing. To receive payment, the customer would present the invoice to the cashier at the main office. The owner testified that there were three cameras in the recycling area because the employees were "handling . . . very expensive metals."

On September 29, 2011, Scott created an invoice for a customer for the sale of over 200 pounds of copper and other metals with an amount due of $562.60. However, when M&S's owner reviewed the shop's surveillance video from Scott's work station, there was no transaction for the invoiced metals on the videotape, and Scott later admitted that he had created the fraudulent invoice. He was arrested and indicted on one count of criminal attempt to commit theft by taking (fiduciary). During Scott's ensuing jury trial, at the close of the State's case, he moved for a

---

[1] The record does not reflect whether Scott was an hourly or salaried employee, or what he was paid at M&S.

directed verdict of acquittal, which the trial court denied. The jury found Scott guilty as charged, and he was sentenced to seven and one-half years, with three to serve in prison.

On appeal, Scott contends that the trial court erred in denying his motion for a directed verdict of acquittal on the charge of criminal attempt to commit theft by taking because there was insufficient evidence that he was in a fiduciary relationship with M&S. He asserts that his felony conviction was based on the purported fiduciary relationship with his employer, and because he was not M&S's fiduciary, he could be guilty of only a misdemeanor based on the $562.00 value of the attempted theft.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. We view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.

(Citation and punctuation omitted.) *Valentine v. State*, 301 Ga. App. 630, 630-631 (689 SE2d 76) (2009).

"A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." OCGA § 16-8-2. "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. And,

> [[a] person convicted of a violation of Code Sections 16-8-2 through 16-8-9 shall be punished as for a misdemeanor except . . . [i]f the property was taken by a fiduciary in breach of a fiduciary obligation or by an officer or employee of a government or a financial institution in breach of his or her duties as such officer or employee, by imprisonment for not less than one nor more than 15 years, a fine not to exceed the amount provided by Code Section 17-10-8, or both."

OCGA § 16-8-12 (a) (3).

> [F]iduciary duties are owed by those in confidential relationships as defined by OCGA § 23-2-58[, which] provides that: Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling [influence] over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the

4

law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.

(Citation and punctuation omitted). *Physician Specialists in Anesthesia v. Wildmon*, 238 Ga. App. 730, 732 (1) (521 SE2d 358) (1999). "[T]he existence of a fiduciary relationship is a question for the jury unless there is a complete absence of evidence of such a relationship[.]" *Levine v. SunTrust Robinson Humphrey*, 321 Ga. App. 268, 281 (7) (a) (740 SE2d 672) (2013).

In contesting the sufficiency of the evidence to demonstrate his fiduciary relationship with M&S, Scott maintains that with no managerial or supervisory duties and no decision making authority for any of the business matters, his relationship was that of employer-employee, which in Georgia, "is that of arms-length bargaining."

The State asserts that, as was the case with Scott's position, a confidential relationship between an employer and employee may exist under particular fact situations, such as "when 'the agent is vested with authority, real or ostensible, to create obligations on behalf of the principal, bringing third parties into contractual relations with him,'" quoting *Physician Specialists*, 238 Ga. App. at 732 (1) (a). The State contends that Scott had express authority to act for M&S in purchasing metal, and thus their relationship was that of a principal/agent rather than that of a mere

employer/employee. See OCGA § 10-6-1 ("The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him[.]"); *Benson v. McMillan*, 261 Ga. App. 78, 82 (1) (581 SE2d 707) (2003) (evidence established a confidential relationship when employer entrusted employee with "significant financial responsibility and authority"). According to the State, Scott's position was one in which he was entrusted to identify metals, weigh the metals to ensure their worth, produce an accurate invoice of the amount owed to the customer, and obligate M&S to the customer for that amount.

While mindful of factual situations dictating otherwise, as a general rule, courts do not view the employer-employee relationship as being a "confidential relationship" within the meaning of OCGA § 23-2-58. *Gale v. Hayes Microcomputer Products*, 192 Ga. App. 30, 31 (2) (383 SE2d 590) (1989). See *Physician Specialists*, 238 Ga. App. at 734 (1) (b) (an employer-employee relationship does not typically create a principal-agent relationship and "Assistant Practice Administrators were not agents who could enter into obligations on behalf of Physician Specialists. . . . [and, a]s a result, they were not agents owing a fiduciary duty to Physician Specialists."); *Avion Systems v. Bellomo*, 338 Ga. App. 141, 143-144 (1) (789 SE2d 374) (2016) ("In order for Bellomo to serve as Avion's agent, he had to be more than the employee

6

delegated by Avion to solicit and cultivate relationships with potential customers —

he had to be vested with authority, real or ostensible, to create obligations on behalf

of Avion, bringing third parties into contractual relations with Avion.") (citation and

punctuation omitted); compare *Christian v. State*, 288 Ga. App. 546, 547-548 (1)

(654 SE2d 452) (2007) (evidence that the executrix of estate emptied estate's bank

accounts and appropriated the monies for her own use sufficient to sustain theft by

taking by a fiduciary conviction); *Leary v. State*, 256 Ga. App. 639, 640 (1) (569

SE2d 593) (2002) ("evidence that Leary – the apartment manager responsible for

collecting rents -- received rent payments from tenants, but failed to turn those

payments over to Hamrick" sufficient to find Leary guilty of theft by taking by a

fiduciary); *Hanson v. State*, 232 Ga. App. 352, 354 (2) (b) (501 SE2d 865) (1998)

("[E]vidence of Hanson's position as an assistant manager, with responsibility for

closing out the cash register and accounting for the money made, was sufficient for

a jury to find beyond a reasonable doubt that a fiduciary relationship existed."); *Eads*

*v. State*, 193 Ga. App. 262, 263 (1) (387 SE2d 591) (1989) (evidence sufficient to

establish theft by taking fiduciary where defendant authorized by power of attorney

to sign, endorse, receive, and deposit checks for victim, instead appropriated funds

for own use.)

Here, although Scott was responsible for creating invoices based on the weight of the metals, he did not have authority to act for M&S beyond weighing the metals and assigning to the weight a dollar amount that had been previously fixed by M&S. He could not negotiate with the customers, independently determine how much the metals were worth, or obligate M&S to the customer for anything beyond what M&S had determined it would pay to each customer. Further, the evidence demonstrates that Scott had only worked at M&S approximately six months before the incident occurred, and was initially hired to only "tear down [and] process material," and "five or six days" later he was trained to weigh materials.

Given these facts, we find the evidence insufficient to demonstrate a "confidential relationship" within the meaning of OCGA § 23-2-58 between Scott and M&S, rather the evidence shows that the relationship was nothing more than that of mere employer-employee. See *Parello v. Maio*, 268 Ga. 852, 853 (1) (494 SE2d 331) (1998) ("[T]he mere circumstance that two people have come to repose a certain amount of trust and confidence in each other as the result of business dealings is not, in and of itself, sufficient to find the existence of a confidential relationship.")

Accordingly, although the conviction for criminal attempt to commit attempted theft by taking stands, the felony sentence, having been entered on the basis that Scott

8

was a fiduciary pursuant to OCGA § 16-8-12 (a) (3), is reversed. The case is remanded to the trial court for resentencing.

*Judgment affirmed in part and reversed in part; case remanded for resentencing. McMillian and Mercier, JJ., concur*.