A95A1541. HOPKINS et al. v. HUDGINS & COMPANY, INC.

(462 SE2d 393)

BIRDSONG, Presiding Judge.

William Alfred Hopkins and Joyce Hopkins appeal the state court's order granting appellee/defendant Hudgins & Company's motion to dismiss or, in the alternative, motion for summary judgment.

Appellant William Hopkins (hereinafter appellant) purchased a metal, roll-up, garage-type door from appellee; appellee's personnel estimated its weight as ranging between 200 and 400 pounds. Parts to the door were loaded on appellant's truck in appellee's supply yard. Appellant, by way of deposition, testified he was standing several feet behind his truck when he was hit by something hard and was knocked unconscious. Appellant received severe head injuries. Some circumstantial evidence exists that, under appellant's version of the incident, he was struck by metal door parts being carried by a skid-steer loader (forklift). However, appellant's medical records reflect that appellant or his wife informed medical personnel that appellant was injured when he fell off the back of his own truck. Subsequently, in an affidavit in opposition to the motion at issue, appellant asserts that he had never lifted a door of this weight before, and that if he had known it weighed 300 to 400 pounds he would never have agreed to lift it off of the forks of the forklift. Appellant and his wife in their affidavits proceed to explain the discrepancy in appellant's testimony as follows: The injury caused appellant a memory loss; immediately following the accident H. T. Hudgins told appellant's wife that appellant was injured when he fell off his truck. Believing this to have occurred, appellant's wife thereafter told both medical personnel and appellant that he had been injured when he fell off his truck; appellant may have repeated this information to hospital personnel himself as initially he had thought he must have been in an automobile accident. Later, after appellant was released from the hospital and returned home, his memory appeared to return; the last thing he now remembers is standing five to six feet behind his truck, seeing that the door had already been loaded on the truck, and then being hit.

Steven Hudgins (part owner of appellee business) and an employee who was operating the forklift testified, by way of their depositions, that appellant had insisted that the door be manually loaded on his truck to prevent damage. It was then agreed between appellant and Hudgins that the door would be carried on the forklift to the side of the truck and lowered until the forklift prongs almost touched the sideboards of the truck; appellant and Hudgins then would manually lift the door and place it on the truck bed. Hudgins was near the truck cab facing the end of the truck; appellant was standing near the end of the truck facing the cab. Before the men attempted to lower the door, Dantzler, the forklift operator, offered to assist, but appel-

lant and Hudgins both declined the offer indicating they could handle the job by themselves. As the door was being lowered, appellant appeared to slip and fell off the truck bed, injuring himself.

Dantzler's deposition testimony basically corroborates Hudgins' account of the events. However, Dantzler further testified: As appellant and Hudgins proceeded to unload the door it got away from them; this was caused by "just the weight itself." "They should have checked [the door] before they grabbed it. . . . [T]hey underestimated [the door], that was all." It appeared to Dantzler that the door may have hit appellant on the thighs or shin; the weight of the door "sort of pushed" appellant back. The evidence as to appellee's policy of allowing customers to load their own merchandise is conflicting in part. However, Dantzler testified that appellee had a policy not to let customers help load. H. T. Hudgins or his boys told Dantzler not to let customers help load things because it was too dangerous and not to let customers help load because if they got hurt there would be no insurance coverage. Dantzler believed that the way the door was being unloaded was not dangerous.

Steven Hudgins testified that yard procedures are governed by OSHA regulations. Appellant offered expert testimony by way of an affidavit of a safety engineer who opined that the loading procedure violated an OSHA safety regulation and ANSI Standard 605 and that the procedure used also was a gross violation of the ordinary care standard.

There also exists various photographs of record of appellant's truck, the door, and its components.

Each of appellants' five enumerations of errors asserts that the trial court erred in granting summary judgment to appellee. *Held*:

1. (a) The applicable summary judgment standard is that of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). Further, in ruling on a summary judgment motion, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843).

(b) Appellant was an invitee on appellee's premises; he was a customer who had purchased a steel garage door, which was being loaded onto his truck at the time of his injury. "A proprietor is not an insurer of the invitee's safety." *Shansab v. Homart Dev. Co.*, 205 Ga. App. 448, 450 (3) (422 SE2d 305). Appellee owed appellant a duty of ordinary care not to injure him while he was on the premises. Compare *Lipham v. Federated Dept. Stores*, 263 Ga. 865 (440 SE2d 193) with OCGA § 51-3-1 and *Motel Properties v. Miller*, 263 Ga. 484, 485 (1) (436 SE2d 196).

(c) "Except in plain, palpable and undisputed cases where rea-

sonable minds cannot differ as to the conclusions to be reached, questions of negligence, proximate cause, including the related issues of foreseeability, assumption of risk, lack of ordinary care for one's own safety, lack of ordinary care in avoiding the consequences of another's negligence, contributory and comparative negligence are for the jury." *Wade v. Mitchell*, 206 Ga. App. 265, 268 (4) (424 SE2d 810) and cases cited therein.

(d) It is not grounds for reversal that the trial court elected not to issue findings of fact and conclusions of law in support of its grant of summary judgment. OCGA § 9-11-52; *Dixie Diners &c. v. Gwinnett Fed. Bank, FSB*, 211 Ga. App. 364 (439 SE2d 53). However, such findings and conclusions frequently can be helpful to appellate courts and instructive to the parties. See *Harrell v. Louis Smith Mem. Hosp.*, 197 Ga. App. 189 (1) (397 SE2d 746).

(e) We decline to invoke the contradictory testimony rule of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) against appellant, regarding the alleged contradictions between his deposition testimony and between his medical records, concerning the circumstances surrounding the manner in which he was injured. "[E]ven where testimony is contradictory, if a reasonable explanation is offered for the contradiction, the testimony will not be construed against the party-witness. The burden rests upon the party giving the contradictory testimony to offer a reasonable explanation, and whether this has been done is an issue of law for the trial judge. [Cit.]" Id. at 30 (2). We find that a reasonable explanation was offered in this particular case for the apparent contradiction between appellant's deposition testimony and the medical history recounted in his medical records regarding the manner in which he sustained major head injuries. That is, as above discussed, the injury caused appellant a memory loss, and after a certain lapse, his memory returned causing appellant to have made varying statements as to the manner in which his injury occurred.

2. We cannot conclude from the evidence of record that this is such a clear and palpable case as to warrant an exception to the general rule requiring negligence and related issues to be submitted to a jury. *Wade v. Mitchell*, supra.

Additionally, we are satisfied that this case should be submitted to the jury regardless whether appellant's injuries were sustained when he was on the ground merely looking at the truck or when he was on the truck bed and in the act of assisting in the unloading of the door. The evidence, under either scenario, lends itself to the drawing of more than one reasonable inference as to appellant's cause of action and appellee's various defenses. For example, under appellee's version of the incident, the various photographs of appellant's truck, the door, and its component parts, especially when coupled

with the deposition testimony of the forklift operator, would enable a jury to draw more than one reasonable inference regarding issues of negligence and assumption of the risk. "It is the jury's function to draw an inference from the evidence when more than one inference can be drawn." *Thompson v. Crownover*, 259 Ga. 126, 130 (6) (381 SE2d 283).

*Judgment reversed. Johnson and Smith, JJ., concur.*

DECIDED AUGUST 23, 1995 —
RECONSIDERATION DENIED SEPTEMBER 13, 1995 — 

*Davis, Zipperman, Kirschenbaum & Lotito, E. Marcus Davis, Barry L. Zipperman*, for appellants.

*Alembick, Fine & Callner, Mark E. Bergeson, Janet L. Franchi*, for appellee.