A99A2105. DESMOND v. TRONCALLI MITSUBISHI et al.
(532 SE2d 463)

RUFFIN, Judge.

David Desmond sued his former employer, Troncalli Mitsubishi and Troncalli Motors, Inc. (collectively Troncalli) and the general manager of Troncalli Mitsubishi, David Pelligrinelli, for false arrest, malicious prosecution, slander, and intentional infliction of emotional distress. Troncalli moved for summary judgment on all counts, and the trial court granted its motion.[1] Desmond challenges the grant of summary judgment. For reasons that follow, we affirm.

Initially, we note that Desmond has failed to comply with Court of Appeals Rule 27 (c) (1) in that the sequence of argument in his brief does not follow his enumerations of error. Although Desmond enumerates 19 errors, his argument section contains a hodge-podge of sections and subsections that do not correlate with his enumerated errors. Desmond's disregard for our rules has made our job more difficult. As we have held,

> Rule 27 (c) (1) is more than a mere formality. It is a requirement which this Court imposes to ensure that all enumerations of error are addressed and to facilitate review of each enumeration. By failing to comply with the rule, [the appellant has] hindered the Court's review of [his] assertions and [has] risked the possibility that certain enumerations will not be addressed. Accordingly, to the extent that we are able to discern which of the enumerations are supported in the brief by citation of authority or argument, we will address those enumerations. Pursuant to Court of Appeals Rule 27

---

[1] Pelligrinelli, who no longer works for Troncalli, did not move for summary judgment, and he is not a party to this appeal.

(c) (2), however, all other enumerations will be treated as abandoned.[2]

Summary judgment under OCGA § 9-11-56 is appropriate in cases in which there are no genuine issues of material fact and the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[3]

So viewed, the record shows that, on October 27, 1996, Troncalli Mitsubishi hired Desmond as a salesman. On November 13, 1996, Marilyn Lavender went to Troncalli to purchase a car and met with Desmond. According to Lavender, Desmond told her she needed $500 for a down payment, but she did not have enough money with her. Lavender testified that she had $355 that she gave to Desmond for the down payment, plus $55 for a car tag. Lavender testified that Desmond told her to bring in another $145 the next day.

Desmond testified that Lavender gave him approximately $400 on November 13 and that he gave the money to Troncalli. Desmond further asserted that he gave Lavender a receipt, but Lavender claimed that she was never given one. Lavender also claimed that, when she returned to Troncalli Mitsubishi on November 14, she gave Desmond an additional $150.

When Lavender returned to Troncalli on November 15, Desmond told her that she would need more car insurance in order to obtain financing, and the two went to an insurance agency. Desmond, who paid the $189 insurance bill with a Troncalli check, testified that he used a portion of the original $390 to pay for the insurance. Lavender, on the other hand, maintains that she gave Desmond an additional $200 in cash to pay for the insurance, which Desmond kept.[4]

On November 18, Desmond was terminated from Troncalli. Lavender called the dealership twice to speak to Desmond and was told that he was not there. When Lavender was unable to reach Desmond, she told the dealership that she wanted the return of her money and the car that she had traded in.

Lavender returned to the dealership on November 20 and was told that Desmond had been fired, but she was not told why. At some point, a saleswoman named Rachel and an unnamed salesman told Lavender that Desmond had been fired for taking money.

Lavender spoke with another salesman who told her that she would need a down payment of $3,000 to finance the car. Lavender explained that Desmond had told her she needed only $500 and that she had already given him the money. The salesman initially told

---

[2] (Punctuation omitted.) *Brown v. Cooper*, 237 Ga. App. 348 (514 SE2d 857) (1999).

[3] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[4] Lavender also testified that Desmond used part of the $200 to pay for gas.

Lavender that Troncalli's records showed only a payment of $55 for the car tag. But the dealership subsequently acknowledged that it had received $390 from Lavender, of which $189 had been refunded to Lavender to pay for insurance.

Lavender became upset, and the salesman took her to a back office along with three other Troncalli employees that Lavender identified only as Sam, Steve, and Rachel. Lavender explained that she had given Desmond $355 toward her $500 down payment, plus $55 for her tag, an additional $150 toward her down payment, and $200 for her insurance.[5] According to Lavender, Sam asked her, "Are you telling the truth?" and she responded "Man, I wouldn't come way out here to tell a lie. . . . I gave Dave the money."

Sam told Lavender that he could not refund any of the money because he had no proof that she had given the money to Desmond. Lavender showed Sam a piece of paper documenting Desmond's request for her to pay $200 for insurance, and she was given a check for $200.[6] But Lavender was told she would have to return later to obtain the rest of the money because Troncalli needed time to investigate further. When Lavender returned, she signed two documents — one of which was notarized — attesting that she had given money to Desmond, and the dealership gave her a check for $355.

After Lavender made these allegations, Pelligrinelli contacted the DeKalb County Police Department to report the missing money and completed an incident report. On December 2, 1996, Pelligrinelli completed an affidavit accusing Desmond of theft by conversion, and a magistrate, finding probable cause, issued an arrest warrant. Although Desmond received a copy of the warrant in the mail, he did not turn himself in.

Also in December, Pelligrinelli informed the Georgia Department of Labor that Desmond had been discharged for failure to report to work or scheduled meetings as required. Pelligrinelli also wrote that "since [Desmond's] termination, it has been discovered that [he] may have been involve[d] in crimes which may have occurred at [the] dealership. Warrants are outstanding."

In June or July 1997, Desmond was arrested. According to Desmond, the police arrived at his home at 4:00 a.m., placed him in handcuffs, and transported him to jail. After six to eight hours in jail, Desmond posted bond and was released.

On October 10, 1997, at the preliminary hearing, a Troncalli

---

[5] But Lavender did acknowledge that the insurance company was paid with a dealership check.

[6] According to the comptroller for Troncalli, the check, which was for $201, represented the original $390 down payment minus the $189 that the dealership had paid for Lavender's insurance.

employee informed the court that Troncalli would not prosecute the claim. Apparently, the employees who had been involved in the incident, including Pelligrinelli, no longer worked for the dealership. Thus, the State declined to issue an accusation charging Desmond.

On March 13, 1998, Desmond sued Troncalli and Pelligrinelli for false arrest, malicious prosecution, slander, and intentional infliction of emotional distress. Troncalli moved for summary judgment on all counts, and the trial court granted the motion. This appeal ensued.

1. In his first enumeration of error, Desmond contends that the trial court erred in failing to articulate its bases for granting summary judgment. We disagree. Although findings of fact and conclusions of law are helpful for appellate review, a trial court's failure to issue them in granting summary judgment under OCGA § 9-11-56 provides no basis for reversal.[7]

2. In multiple enumerations of error, Desmond argues that the trial court erred in granting summary judgment on his false arrest and malicious prosecution claims. Again, we disagree.

Initially, we note that neither false arrest nor malicious prosecution claims are favored under Georgia law.[8] It is public policy to encourage citizens to bring to justice those who appear guilty.[9] Nevertheless, if an arrest or prosecution lacks probable cause and is prompted by malice, then a person may have a claim for false arrest or malicious prosecution.

The elements of a false arrest claim include: (1) an arrest under the process of law, (2) without probable cause, and (3) made maliciously.[10] In such an action, it is also essential to show that the prosecution terminated in favor of the complaining party.[11] A claim of malicious prosecution involves "[a] criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted."[12]

To prevail against Troncalli under either cause of action, Desmond must show that Pelligrinelli,[13] the Troncalli employee who prosecuted Desmond, acted maliciously and without probable cause. If Desmond is unable to satisfy either element, then Troncalli is entitled to summary judgment on both causes of action.[14]

---

[7] *Hopkins v. Hudgins & Co.*, 218 Ga. App. 508, 510 (1) (d) (462 SE2d 393) (1995).

[8] *Day Realty Assoc. v. McMillan*, 247 Ga. 561, 562 (277 SE2d 663) (1981); *McGonagil v. Treadwell*, 216 Ga. App. 850, 853 (1) (456 SE2d 260) (1995).

[9] *Day Realty*, supra.

[10] OCGA § 51-7-1; *Simmons v. Kroger Co.*, 218 Ga. App. 721, 722-723 (1) (463 SE2d 159) (1995).

[11] *Campbell v. Hyatt Regency*, 193 Ga. App. 542 (2) (388 SE2d 341) (1989).

[12] OCGA § 51-7-40.

[13] See *Roberts v. Duco Dev.*, 229 Ga. App. 549, 550 (494 SE2d 313) (1997) (employer is liable for employee's intentional tort committed within the scope of employment).

[14] See *Lau's Corp.*, supra (a defendant will prevail at summary judgment by demon-

Pretermitting whether Pelligrinelli had probable cause to suspect Desmond of stealing money, the absence of evidence that Pelligrinelli acted maliciously is fatal to Desmond's case. Malice consists of: (1) personal spite, or (2) "general disregard of the right consideration of mankind, directed by chance against the individual injured."[15] There is nothing in the record before us that shows or tends to show that Pelligrinelli acted with malice in prosecuting Desmond for theft by conversion. Indeed, Desmond acknowledged that he never got to know Pelligrinelli on a personal level. And Desmond never deposed Pelligrinelli to ascertain what might have prompted him to prosecute Desmond. Accordingly, the trial court did not err in granting Troncalli's motion for summary judgment on both the false arrest and malicious prosecution claims.[16]

3. Desmond asserts that the trial court erred in granting summary judgment in favor of Troncalli on his slander claim. Desmond points to Lavender's testimony that at least two Troncalli salespeople told her that he had been fired for stealing. He also asserts that Pelligrinelli's statements to the Georgia Department of Labor were slanderous. According to Desmond, Troncalli should be held liable for these slanderous statements. We disagree.

With respect to the statements made by the Troncalli employees, we note that

> the doctrine of respondeat superior does not apply in slander cases, and a corporation is not liable for the slanderous utterances of an agent acting within the scope of his employment, unless it affirmatively appears that the agent was expressly directed or authorized to slander the plaintiff.[17]

Desmond points to no evidence supporting his contention that Troncalli directed or authorized its employees to make such statements or that Troncalli ever ratified the statements. Consequently, the trial court did not err in granting summary judgment on this claim.

To the extent that Desmond's claim was based upon Pelligrinelli's written statement to the Department of Labor, we note that the statements are "absolutely privileged" and cannot serve as "the subject matter or basis for any action for slander or libel in any

---

strating the absence of evidence on one essential element of plaintiff's case).

[15] OCGA § 51-7-2.

[16] See *Franklin v. Consolidated Govt. of Columbus*, 236 Ga. App. 468, 470-471 (1) (512 SE2d 352) (1999).

[17] (Punctuation omitted.) *Smith v. Trust Co. Bank*, 215 Ga. App. 413, 416 (2) (450 SE2d 866) (1994).

court of the State of Georgia."[18]

4. In three enumerations of error, Desmond contends that the trial court erred in granting summary judgment on his claim of intentional infliction of emotional distress. To prevail on a claim of intentional infliction of emotional distress, Desmond must demonstrate that:

> (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.[19]

Desmond is unable to meet the stringent burden of proving such a claim.[20] Desmond's claim of intentional infliction of emotional distress is predicated upon Troncalli's prosecution of the conversion claim and Desmond's subsequent arrest. Because a magistrate found that Troncalli had probable cause to prosecute Desmond, the filing of charges against Desmond cannot serve as the basis for his claim.[21] Thus, the trial court did not err in granting summary judgment on Desmond's claim.[22]

5. Desmond contends that the trial court erred in considering deposition testimony of Kymberli Durden because the deposition was not timely filed. Pretermitting whether the trial court erred, for the reasons stated in Divisions 1 through 4, any such error was harmless.[23]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 24, 2000.

*Terence T. Thomas, Sarah E. Yarbrough,* for appellant.
*Fisher & Phillips, Michelle C. Hamilton, Joseph M. English, Burton F. Dodd,* for appellees.

---

[18] OCGA § 34-8-122 (a); *Hightower v. Kendall Co.*, 225 Ga. App. 71, 72 (2) (483 SE2d 294) (1997).

[19] (Citation and punctuation omitted.) *Frank v. Fleet Finance &c.*, 238 Ga. App. 316, 318 (518 SE2d 717) (1999).

[20] See id.

[21] *Biven Software v. Newman*, 222 Ga. App. 112, 115 (1) (473 SE2d 527) (1996).

[22] Id.

[23] See *Porter Coatings v. Stein Steel &c. Co.*, 247 Ga. 631 (278 SE2d 377) (1981).