A06A0803. TOOTLE v. CARTEE et al.
(634 SE2d 90)

PHIPPS, Judge.

Officials at a state college in Vidalia decided not to renew the employment contract of one of the college's teachers. As a result, the teacher was escorted off campus by city police. School officials later held meetings with students and faculty members to address concerns raised by the teacher's unexpected departure. The teacher brought this suit against the officials, claiming that they had slandered her at the meetings and intentionally caused her emotional distress. The trial court granted the defendants' motion to dismiss on jurisdictional grounds based on official immunity. The teacher appeals. Because the legislature has given the college officials immunity from state tort liability under the circumstances present here, we affirm.

"When ruling on a motion to dismiss based upon jurisdictional grounds, the trial court must make the determination acting as the trier of fact."[1] The defendant has the burden of proving facts necessary to support a judgment of dismissal.[2] "We review the trial court's ruling on a motion to dismiss under the de novo standard of review."[3] The facts here, as shown by the allegations of the complaint as well as affidavits and depositions of the defendants, are as follows.

---

[1] *Derbyshire v. United Builders Supplies*, 194 Ga. App. 840, 842 (1) (392 SE2d 37) (1990) (citations omitted).

[2] *Manufacturers Nat. Bank of Detroit v. Tri-State Glass*, 201 Ga. App. 253, 254 (1) (410 SE2d 808) (1991).

[3] *Davis v. Standifer*, 275 Ga. App. 769, 771 (1) (621 SE2d 852) (2005) (citation and punctuation omitted).

Patty Tootle became employed by the State of Georgia as the Pharmacy Technician Instructor at Southeastern Technical College (STC) in Vidalia in the fall of 2003. During her job interview, Tootle was told that having a valid Georgia pharmacy license was a condition of her employment. She represented to the interviewing committee that she had withdrawn her license but could have it reinstated. The following spring, Dawn Cartee (Vice President for Academic Affairs at STC) sent Tootle a letter giving her official notification that her contract would not be renewed if she did not have her license reinstated. Because Tootle did not do so, Cartee later recommended to Cathryn Meehan (President of STC) that Tootle's employment contract not be renewed. Meehan approved the recommendation. Pursuant to standard procedure, Cartee arranged for security officers to be present when Tootle was asked to leave. Because Cartee lacked confidence in campus security personnel, she instructed Barry Dotson (Vice President of Student Services at STC) to have city police present as well. As a result, Tootle was confronted by officers of the Vidalia Police Department and escorted from the premises of the college by armed policemen, after she had been informed that her contract was not being renewed and that she was being placed on administrative leave with pay. In May, Cartee, Dotson, and Dianne Stewart (Dean of Allied Health and Personal Services at STC) conducted a meeting with students to address concerns raised by Tootle's dismissal. Another meeting, at which Stewart was not present, was conducted with faculty members who became concerned about their own job security when Tootle was dismissed.

In April 2005, Tootle brought this suit against Cartee, Meehan, Dotson, and Stewart. Tootle claimed that in the meetings with faculty and students, Cartee, Dotson, and Stewart made slanderous and defamatory statements about her by saying that she had been escorted out of the building because she was dangerous to students and faculty, and that she had a substance abuse problem and needed help. Tootle also sought damages for intentional infliction of emotional distress based on defendants' actions in not renewing her contract, in having her escorted from the campus by police, and in making defamatory statements about her in the meetings with students and with faculty members.

The defendants answered the complaint and moved to dismiss on grounds that at all relevant times they were acting within the scope of their employment with the state and, therefore, are entitled to official immunity under the Georgia Tort Claims Act (GTCA, codified at OCGA § 50-21-20 et seq.). In agreement, the trial court granted their motion to dismiss.

The GTCA, in OCGA § 50-21-23 (a), waives the sovereign immunity of the state for the torts of state officers and employees "while

acting within the scope of their official duties or employment," subject to the exceptions set forth in OCGA § 50-21-24.[4] OCGA § 50-21-24 sets out 13 exceptions to the waiver of sovereign immunity.[5] Under the exception set forth in OCGA § 50-21-24 (7), the state has no liability for losses resulting from, among other things, slander.[6] Similarly, under general principles of tort law, "the doctrine of respondeat superior does not apply in slander cases, and [a principal] is not liable for the slanderous utterances of an agent acting within the scope of his employment, unless it affirmatively appears that the agent was expressly directed or authorized to slander the plaintiff."[7] Moreover, OCGA § 50-21-25 (a) provides that the GTCA constitutes the exclusive remedy for any tort committed by a state officer or employee, and that "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor."[8] Because OCGA § 50-21-25 (a)'s exemption from state tort liability for state officers or employees applies even to the 13 exceptions from state liability categorized in OCGA § 50-21-24, neither the state officer or employee nor the state is liable under state tort law for a slander committed by a state officer or employee within the scope of his or her official duties or employment.

Although the defendants deny making the statements which Tootle attributes to them, they acknowledge that the college does not authorize personnel who have been involved in making a decision to terminate a teacher, or to place a teacher on administrative leave, to disclose the reasons for such action to students or to other faculty members.

Tootle argues that because the defamatory statements which she claims the defendants made were thus unauthorized by their employer, the statements could not have been made within the scope of their employment. This argument is without merit. As a matter of general tort law, the fact that an employee's slanderous utterance is not authorized by his employer does not mean that the employee was not acting within the scope of his employment at the time of the slander.[9] And the GTCA's exemption of state officers and employees from liability for torts committed while acting within the scope of

---

[4] *Lewis v. Ga. Dept. of Human Resources*, 255 Ga. App. 805, 806 (567 SE2d 65) (2002).

[5] *Ogles v. E. A. Mann & Co.*, 277 Ga. App. 22, 26 (2) (625 SE2d 425) (2005).

[6] *Youngblood v. Gwinnett Rockdale Newton Community Svc. Bd.*, 273 Ga. 715, 717 (3) (545 SE2d 875) (2001).

[7] *Desmond v. Troncalli Mitsubishi*, 243 Ga. App. 71, 75 (3) (532 SE2d 463) (2000) (footnote omitted).

[8] See *Davis v. Standifer*, supra at 771 (1) (a).

[9] See *Desmond v. Troncalli Mitsubishi*, supra.

their official duties or employment "has been construed broadly" to include unauthorized tortious acts that occur during the time the officer or employee is engaged in performance of his official duties.[10] For instance, *Mattox v. Bailey*[11] held that under the GTCA an officer at a state correctional institution had state tort immunity from a claim that he had battered an inmate by slamming his head into a door and beating him while escorting him across prison grounds. Similarly, *Davis v. Standifer*[12] held that a Georgia State Patrol officer had immunity from a state tort claim that he had engaged in sexual misconduct toward a female motorist during a traffic stop.[13] Thus, the GTCA immunity is not abrogated by allegations that the state employee's actions were ill-intentioned or motivated by malice.[14]

Here, it is undisputed that, in meeting with students and faculty, and at all other relevant times, the various defendants were engaged in the performance of their official duties.[15] Therefore, under the GTCA they enjoy state tort immunity for statements they may have made at those meetings concerning the reasons for Tootle's dismissal, and for the actions they took to effect her dismissal.[16] Consequently, the court did not err in dismissing Tootle's state tort claims of slander and intentional infliction of emotional distress based on their defense of official immunity.

*Judgment affirmed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED JUNE 20, 2006 —
RECONSIDERATION DENIED JULY 12, 2006 — 

*Smith & Jenkins, Wilson R. Smith,* for appellant.

---

[10] *Davis v. Standifer,* supra; *Hardin v. Phillips,* 249 Ga. App. 541, 544 (1) (547 SE2d 565) (2001).

[11] 221 Ga. App. 546 (1) (472 SE2d 130) (1996).

[12] Supra.

[13] Notwithstanding the existence of state tort immunity under the GTCA, the state officer or employee may be subject to liability on other theories. Thus, although the GTCA barred the state law battery claim against the correctional officer in *Mattox,* the prisoner there had a potentially valid claim against the officer under 42 USC § 1983. See *Mattox v. Bailey,* supra at 546 (2). Similarly, the female motorist in *Davis* had a potential § 1983 claim against the Georgia State Patrol officer. See *Davis v. Standifer,* supra at 775-776 (2).

[14] See *Ridley v. Johns,* 274 Ga. 241 (552 SE2d 853) (2001); *Hardin v. Phillips,* supra at 543 (1).

[15] Compare *Cary v. Dept. of Children & Youth Svcs.,* 235 Ga. App. 103 (508 SE2d 469) (1998).

[16] See *Wang v. Moore,* 247 Ga. App. 666, 669 (544 SE2d 486) (2001) (faculty members of state college were acting within the scope of their employment duties in firing nontenured professor they supervised).

432

*Thurbert E. Baker, Attorney General, Rebecca S. Adams, Assistant Attorney General,* for appellees.