**SECOND DIVISION**
**DOYLE, P. J.,**
**DAVIS, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.gov/rules**

**June 15, 2026**

# In the Court of Appeals of Georgia

A26A0081, A26A0082. BROWN v. TRIDENT WHOLESALE, INC. et al. (two cases).

DOYLE, Presiding Judge.

In this malicious prosecution action, plaintiff Elaunte Maurice Brown, as administrator of the estate of William Luernest Brown, appeals from an order granting summary judgment to defendants Trident Wholesale, Inc.; Trident Wholesale, Inc., d/b/a Gandhi Wholesale; Gandhi Wholesale, Inc.; Absulrasool Ghulamhussain; Farooq Andhi; Padma Javalla Bhanela; and Chandra Pakash Sankla (collectively "the defendants").[1] Brown contends that the trial court erred because (1) this Court's

---

[1] On January 14, 2025, the trial court issued the order granting summary judgment to the defendants. On February 4, 2025, then-plaintiff William Brown filed a notice of appeal, which was docketed as Case No. A26A0081. William Brown died on March 30, 2024. On April 11, 2025, the trial court (1) substituted Elaunte Brown, as administrator of the estate of William Brown, as the plaintiff, and (2) re-issued its

decision in an earlier appeal of the denial of the defendants' summary judgment motions, *Trident Wholesale, Inc. v. Brown*, 370 Ga. App. 505, 507 n.6 (897 SE2d 610) (2024) ("*Trident*"), wrongly applied the rule in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986)[2]; (2) Brown's claim of self-defense rebutted the prima facie evidence of probable cause supporting Brown's prosecution; (3) certain false statements by the defendants create questions of fact as to the probable cause to support a charge of terroristic threats; (4) Brown's claim of ownership over disputed property he was accused of stealing creates fact issues as to probable cause to support the robbery by intimidation charge; and (5) jury questions remain as to Brown's derivative claims for intentional infliction of emotional distress ("IIED"),

---

summary judgment order with the updated parties and case style. The new plaintiff — Elaunte Brown, as administrator of the estate of William Brown — then filed the appeal in Case No. A26A0082. The issues presented and briefed in each case are duplicative, and in light of the docketing of Case No. A26A0082 with the proper parties, we dismiss Case No. A26A0081 as moot. For purposes of this appeal, references to "Brown" are made in context without distinction between William Brown and his estate.

[2] Under the *Prophecy* rule, "when a party has given contradictory testimony, and when that party relies exclusively on that testimony in opposition to summary judgment, a court must 'construe the contradictory testimony against him.'" *Bradley v. Winn-Dixie Stores, Inc.*, 314 Ga. App. 556, 557 (724 SE2d 855) (2012) (footnote omitted) (citing *Prophecy Corp.*, 256 Ga. at 28(1)).

punitive damages, and attorney fees. Discerning no reversible error, we affirm in each case.

The factual and procedural background was summarized in *Trident* as follows:

Viewing the evidence in the light most favorable to Brown (i.e., the nonmoving party [on summary judgment]), the record shows that in 2008, Brown began selling male sex-enhancement pills—which he purchased from Angel Wholesales—using the brand name "Goldreallas." In September 2010, Goldreallas was incorporated with the Secretary of State of Georgia; and shortly after that, Brown trademarked "Goldreallas" and its logo. But in 2014, Brown received a public notice, along with a cease-and-desist letter, from the United States Food and Drug Administration ("FDA"), notifying him that certain tests revealed Goldreallas were "tainted" and ordering him to stop selling them immediately. Brown believed the pills at issue were not Goldreallas because (he claims) they were never tested by the FDA. So, even though he believed the tainted pills were actually counterfeit Goldreallas, he nevertheless complied with the FDA's order to stop selling them.

On February 26, 2016, Brown went to Trident Wholesale d/b/a Ghandi Wholesale, a wholesale supply business owned by Ghandi and Ghulamhussain, to discuss partnering with them to sell new products, such as an energy shot using the brand name Goldreallas. But when

Brown arrived, he immediately noticed counterfeit Goldreallas pills for sale. And according to Brown, the pills were identical to Goldreallas in every respect, including the name, logo, color, size of the box, serial code, and packaging. As a result, Brown demanded Ghandi and Ghulamhussain stop selling the pills because they were using his brand name without compensating him; and in any event, the FDA had banned them from being sold. Later, over dinner, the men discussed the issue again[,] and Ghandi and Ghulamhussain promised Brown they would stop selling the counterfeit Goldreallas.

Then, on April 28, 2016, Brown went to Ghandi Wholesale again to speak to Ghulamhussain about selling a new product; and when he arrived, he saw the counterfeit Goldreallas were still being sold, which made him "pretty upset." Brown then retrieved a large shopping cart and placed all of the counterfeit Goldreallas inside of it "with kind of a sense of urgency." Ghulamhussain was not in his office; but while looking for him, Brown encountered Suman Reddy, a store employee sitting in a truck. Brown instructed Reddy to tell Ghandi to "stop infringing on his trademark and stop selling the stolen property." In response, Reddy rushed toward Brown in an aggressive manner, and Brown stuck out his hand to protect his previously injured shoulder. And according to Brown, Reddy then ran into his hand, and he "pushed him down."[3]

---

[3] [Footnote 6 from *Trident* :] In addition to admitting he pushed Reddy down, Brown also testified, inter alia, that when he placed his arm out to protect himself, Reddy simply fell. And importantly, Brown failed to provide a reasonable explanation

After this physical altercation, Brown returned to the front of the store with the counterfeit products he confiscated and was confronted by Sankla and Bhanela, who were working as cashiers. Brown told them he was the owner of Goldreallas, and Ghandi Wholesale was not allowed to sell the counterfeit pills. One of the cashiers responded that they could sell whatever they wanted to sell. That employee then walked toward Brown, and Brown said "don't walk up on me motherfucker … [l]ike y'all stand back." Later, when asked whether he said this in an aggressive manner, Brown testified that making such a statement "doesn't work in a soft tone of voice. I can't say don't walk up on me motherfuckers and then they fucking stop walking. I have to say don't

for the discrepancies in his testimony regarding his interaction with Reddy. Needless to say, when a party has "given contradictory testimony, and when that party relies exclusively on that testimony in opposition to summary judgment, a court must construe the contradictory testimony against him." *Bradley* …, 314 Ga. App. [at] 557 …(punctuation omitted). And under such circumstances, we must "disregard the favorable portions of the contradictory testimony and then decide whether the remaining evidence is sufficient to get by summary judgment." Id. at 557-58 (punctuation omitted). Here, because Brown's admitted act of *pushing* Reddy down may be relevant to whether there was probable cause to support any of the charged offenses, this testimony must be construed against him. See *CSX Transp., Inc. v. Belcher*, 276 Ga. 522, 523(1) (579 SE2d 737) (2003) ("[A] trial court that is faced with a party's self-contradictory sworn testimony on a material fact should disregard the portions of that testimony that favor the party when deciding a motion for summary judgment, unless the party offers a reasonable explanation for the contradiction."); *Thornton v. Nat'l Am. Ins. Co.*, 269 Ga. 518, 519(4) (499 SE2d 894) (1998) (reiterating its prior holding that "on a motion for summary judgment, the moving party's self-contradictory testimony, if not reasonably explained, was to be construed against him").

walk up on me in order for them to understand not to walk up on me." And according to Brown, the situation escalated to the point that he and Bhanela were yelling at each other. Eventually, Brown left the warehouse, taking all of the counterfeit Goldreallas with him.

About ten minutes later, Ghandi called Brown "screaming and cursing" and threatening to call 911. Brown responded by saying, "fine, call 911." When the police arrived, they took statements from the Ghandi Wholesale employees involved and reviewed security footage of the altercation between Brown and the two cashiers. Then, following an investigation into the matter, an investigator with the Forest Park Police Department issued a detailed report, concluding that there was probable cause to apply for warrants to arrest Brown for robbery by intimidation, terroristic threats, and simple battery.

Given these conclusions, the investigator applied for warrants to arrest Brown for the foregoing offenses, and the magistrate court issued them. Thereafter, Brown waived his right to a preliminary hearing "to examine the issue of probable cause" for each of the charged offenses. Ultimately, Brown was charged, via indictment, with robbery by intimidation, simple battery, and two counts of terroristic threats. Brown's case then proceeded to trial, at which a jury acquitted him of robbery by intimidation, and the trial court granted directed verdicts of acquittal as to the remaining charges.

Following trial, Brown filed suit against Trident, Gandhi, Ghulamhussain, Bhanela, and Sankla, asserting claims for malicious prosecution, IIED, attorney fees, and punitive damages. Discovery then ensued, and eventually, the Trident appellants and Ghulamhussain filed separate motions for summary judgment. The trial court later held a hearing on the matter, after which it denied both motions in a single order. Thereafter, the trial court granted the appellants a certificate of immediate review, and [this Court granted the defendants'] applications for interlocutory appeals.

*Trident*, 370 Ga. App. at 506–08 (cleaned up).

On appeal in *Trident*, this Court held that the trial court "incorrectly analyzed the key elements of Brown's malicious-prosecution claim." Id. at 509(1). The Court explained:

In order to state a claim for malicious prosecution, the plaintiff must show (1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff. But the gravamen of the complaint is the absence of probable cause on the part of the person instituting the prosecution. ... In Georgia, probable cause is defined as the existence of such facts and circumstances as would excite the belief in a reasonable mind that the person charged was guilty of the crime for which he was prosecuted. ... Significantly, the return of an indictment is prima facie,

7

though not conclusive, evidence of probable cause, as is the waiver of a preliminary hearing.

*Trident*, 370 Ga. App. at 509–10(1) (cleaned up).

In this context, the *Trident* Court held that

the trial court, among other things, failed to acknowledge the prima facie evidence that probable cause supported *all* of Brown's charged offenses (i.e., he was indicted by a grand jury and waived his right to a preliminary hearing). As a result, the trial court also did not address whether Brown successfully rebutted this prima facie evidence. In fact, although the trial court mentioned probable cause a few times in passing and noted that the lack of probable cause is one element of malicious prosecution, it did not substantively address whether there was probable cause to support Brown's criminal prosecution for any particular offense. ... *Simply put, it is not enough that the trial court found that there were jury questions regarding whether the Trident appellants maliciously initiated Brown's prosecution by either lying or omitting material facts when speaking to police. To the contrary, the trial court was required to independently address the probable-cause element of malicious prosecution.*

*Trident*, 370 Ga. App. at 510-11(1) (emphasis added).

Upon reaching this conclusion, the *Trident* Court vacated the denial of summary judgment and remanded for the trial court "to address whether the lack-of-probable-cause element of malicious prosecution was satisfied." Id. at

8

511–12(1). On remand, the trial court engaged in the analysis as instructed and found that Brown's indictment and waiver of a preliminary hearing established prima facie evidence of probable cause, and Brown failed to rebut that showing. The trial court likewise held that the derivative claims for IIED, punitive damages, and attorney fees failed. Brown now appeals.

1. In his first enumeration, Brown takes issue with this Court's ruling in *Trident*, captured in footnote 6 of *Trident* (noted in the block quote above) and adopted by the trial court, that any conflicts in Brown's account of his interaction with Reddy must be construed against Brown in his opposition to the defendants' motions for summary judgment. *Trident*, 370 Ga. App. at 507 n.6 (quoting *Bradley*, 314 Ga. App. at 557). After receiving supplemental argument by the parties, the trial court applied *Trident's* ruling in its analysis of Brown's statements about his interaction with Reddy and determined that Brown could not rebut the prima facie evidence of simple battery[4] because Brown's testimony included his statement that "I pushed him down," referring to Reddy. Thus, despite Brown's reliance on his other characterizations of

---

[4] See OCGA § 16-5-23(a) ("A person commits the offense of simple battery when he or she either: (1) [i]ntentionally makes physical contact of an insulting or provoking nature with the person of another; or (2) [i]ntentionally causes physical harm to another.").

his conduct as defensive, this Court in *Trident* concluded that this testimony must be construed against Brown, regarding whether it established probable cause as to simple battery.

Because that ruling is the law of the case from *Trident*, Brown cannot now challenge it. "It is well established that any issue that was raised and resolved in an earlier appeal is the law of the case and is binding on this Court[.] ... Where an issue has been specifically litigated and ruled upon by an appellate court, that same specific issue cannot be re-litigated." *State v. Peppers*, 373 Ga. App. 819, 822 (910 SE2d 231) (2024) (citations and punctuation omitted). See generally OCGA § 9-11-60(h) ("[A]ny ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be."). Although Brown criticizes what he characterizes as this Court's "sua sponte" application of the *Prophecy* rule in *Trident*, his avenue for challenging that holding was a successful motion for reconsideration or appeal to the Supreme Court of Georgia. Given that neither occurred, we cannot depart from the ruling in *Trident*.[5]

---

[5] Brown has identified no other error in the trial court's straightforward application of *Trident's* holding with respect to any internal conflicts in his testimony.

2. Brown next contends that the trial court erred by holding that his claim of self defense failed to rebut the prima facie evidence of probable cause of battery, identifying Reddy's allegedly misleading description of their encounter.[6] But even assuming that Reddy's account was false or an exaggeration,[7] the record of Brown's own descriptions of the interaction belies his efforts to rebut the prima facie evidence of probable cause in this case.

Taken in the context of a probable cause inquiry, Brown's testimony described an altercation that ensued when he took products off the shelves of the store, and employees confronted him about his apparent theft. Despite disputing the defendants'

---

[6] Reddy provided a statement to police alleging that Brown

> hit me without any reason, slapped on my face[,] pulled me down[,] and hit [me] with his leg in [my] stomach." Brown testified, "I put my arm out like that, he ran into me. He was rushing towards me ... And when he was coming, I put my arm out like that. He ran into me, and I pushed him down and I left.

[7] See generally *Fleming v. U-Haul Co. of Ga.*, 246 Ga. App. 681, 683(2) (541 SE2d 75) (2000) ("There can be no recovery [for malicious prosecution] even though the prosecution was malicious, if there was probable cause for it[.]" (punctuation omitted)); *Kviten v. Nash*, 150 Ga. App. 589, 591(5) (258 SE2d 271) (1979) (explaining that "[a]lthough a jury cannot infer a lack of probable cause from malice, a jury is authorized to infer malice from a lack of probable cause" (citation omitted)).

11

accounts, Brown's version of events nevertheless shows that he took merchandise off the shelves without permission and angrily and/or physically refused anyone who attempted to stop him. This undisputed evidence was sufficient to show that the defendants had a reasonable ground to believe that Brown had committed a battery because he was not justified in engaging in a forceful or physical struggle in the process of taking the merchandise without authorization from the store. Thus, Brown failed to show that "the defendant[s] could have had no reasonable grounds for believing the plaintiff to be guilty of the charge brought." *Griffin v. Ga. Power Co.*, 186 Ga. App. 565, 565(1) (367 SE2d 832) (1988) (punctuation omitted). See also *K-Mart Corp. v. Coker*, 261 Ga. 745, 746(1) (410 SE2d 425) (1991) (explaining that "[p]robable cause is absent when the circumstances would satisfy a reasonable person that the accuser had no ground for proceeding except a desire to injure the accused," and noting that store employees do not have to determine an accused's subjective intent when electing to prosecute).

This Court has explained: "[M]alicious prosecution suits are disfavored and citizens are encouraged to bring to justice those who are apparently guilty. ... Citizens have a duty to report crimes. ... We do not encourage the reporting of crimes when a

criminal victim easily, and at great hazard, can become a civil defendant." *Remeneski v. Klinakis*, 222 Ga. App. 12, 16(1) (473 SE2d 223) (1996). In light of the record before us, Brown's assertion of Reddy's untruthfulness does not rebut the evidence of probable cause as to battery.[8]

3. Brown argues that inconsistencies in testimony show that summary judgment was not appropriate as to probable cause for the charge of terroristic threats. He identifies Sankla's deposition testimony that, he argues, shows that Sankla falsely told police that Brown had a gun and threatened to shoot him. Specifically, Brown argues that Sankla admitted that his police statement — that he heard Brown say "I will shoot you motherfuckers[,] if you try to follow me" — was not true.[9] Based on this inconsistency, Brown argues that fact issues remain as to a finding of probable cause for terroristic threats.

---

[8] This enumeration also fails for the reasons given in Division 3.

[9] Sankla clarified in his deposition testimony that "I was so scared, and I thought it's a gun ... He did say something that if you follow me and plus he had something in his hand — if you follow me ... something he said I didn't understand him." Sankla realized it was not a gun upon later seeing the security video of the encounter.

Nevertheless, as the trial court ruled, our current case law holds that "a finding of probable cause as to one related offense arising from the same transaction is a binding determination that there was probable cause for all related charges arising from the same transaction or occurrence." *Remeneski*, 222 Ga. App. at 15(1) (citing *Day Realty Assoc. v. McMillan*, 247 Ga. 561 (277 SE2d 663) (1981)). For this rule to apply, "the charges must be based on the same course of conduct with a reasonable relationship between them." *Remeneski*, 222 Ga. App. at 16(1). Here, the indicted offenses — terroristic threats, battery, and robbery — all arose from the single occasion of Brown visiting the Trident store, removing items from the shelves, angrily yelling at staff, and engaging in a scuffle as he was confronted by Reddy. Thus, as indicted, the offenses all occurred as part of the single transaction of Brown's alleged theft of Goldrealla pills from Trident.

At a minimum, Brown's admitted act of taking the Goldrealla pills off of the store shelves without permission from Trident gave reasonable grounds to believe that he was robbing the pills from the store. See OCGA § 16-8-40(a)(2) ("A person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another ... [b]y

14

intimidation[.]"). Thus, for purposes of the malicious prosecution claim in this case, the related acts of allegedly threatening employees and allegedly engaging in simple battery against Reddy all fell within the same transaction of allegedly robbing the store. Compare *Reid v. Waste Indus. USA, Inc.*, 345 Ga. App. 236, 242(2) (812 SE2d 582) (2018) (reversing a grant of summary judgment to the defendants because "the entire basis" for a charge was an incorrect assertion that a malicious prosecution plaintiff pointed a gun while making threatening remarks).

4. With respect to the probable cause to support robbery by intimidation, Brown also contends that factual issues remain as to the element of intimidation and his claim of ownership. We disagree.

(a) *Intimidation.* Under OCGA § 16-8-40(a)(2) "[a] person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another ... [b]y intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another[.]" Such a conviction "requires proof that the theft was attended with such circumstances of terror — such threatening by word or gesture, as in common experience, are likely to create an apprehension of danger, and induce

a person to part with his property for the safety of his person." *Smith v. State*, 247 Ga. App. 173, 174 (543 SE2d 434) (2000) (punctuation omitted). Therefore, for example, this Court has affirmed a conviction in which a defendant demanded money and had put his hand in his pocket, causing a cashier to fear he had a weapon, even though no weapon was found on the defendant's person. See id. at 173-74.

Here, despite any discrepancies about Brown possessing a gun, Brown himself testified that he was angry and "pretty upset," ordered employees not to "walk up on me motherfucker," and took the pills off the shelves "with a sense of urgency." Given the undisputed evidence of his direct verbal confrontation of store employees, including their accounts that Brown was "yelling" at them in a threatening way as they challenged his confiscation of the pills, the record supports the grant of summary judgment as to a finding of probable cause for the intimidation element. Cf. id.

(b) *Robbery*. Brown also argues that summary judgment as to probable cause for robbery is precluded by his claim of ownership of the intellectual property associated with the Goldreallas pills and his claims that Trident somehow lacked proof of lawfully obtaining their inventory. But it is undisputed that the pills were on a shelf as part of regular store inventory, and Brown walked in and took them off the shelf

16

without permission. Nothing Brown alleges demonstrates that the pills were his personal property entitling him to possess them. These undisputed "facts and circumstances were sufficient for a prudent person to believe [Brown] committed the offense" of robbery, i.e., taking products off the shelves without paying or permission. *Lewis v. Ritz Carlton Hotel Co., LLC*, 310 Ga. App. 58, 61(1) (712 SE2d 91) (2011) (affirming the grant of summary judgment as to probable cause despite the plaintiff's exculpatory characterizations of the appropriateness of his conduct).

5. Last, Brown contends that the defendants' conduct — providing misleading information causing his arrest — creates a jury question as to his claim for IIED. We disagree.

> Liability for [IIED] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. ... The issue of whether the allegations rise to the requisite level of outrageousness is a question of law[.]

*Biven Software v. Newman*, 222 Ga. App. 112, 113–14(1) (473 SE2d 527) (1996) (punctuation omitted). In the context of a malicious prosecution claim, if there is probable cause, the filing of charges is "not outrageous." Id. at 115. See also *Desmond*

17

*v. Troncalli Mitsubishi*, 243 Ga. App. 71, 76(4) (532 SE2d 463) (2000) ("Because a magistrate [properly] found that Troncalli had probable cause to prosecute Desmond, the filing of charges against Desmond cannot serve as the basis for his [IIED] claim.") Because the record contains adequate undisputed evidence to support a finding of probable cause, this enumeration presents no basis for reversal.

6. In light of the holdings herein, the trial court correctly granted summary judgment as to Brown's derivative claims for attorney fees and punitive damages. See *Giles v. Greenhouse Apts., LLC*, 378 Ga. App. 586, 593(5) (926 SE2d 324) (2026); *Racette v. Bank of Am., N.A.*, 318 Ga. App. 171, 181(6) (733 SE2d 457) (2012).

*Judgment affirmed in Case No A26A0082. Appeal dismissed as moot in Case No. A26A0081. Davis, J., and Senior Judge C. Andrew Fuller concur.*